892 F.2d 1122
 Angel FELIX DAVIS, As Personal Representative Of the Estate
of Maria Del Carmen Osorio Felix, Plaintiff, Appellee,
v.
VIEQUES AIR LINK, et al., Defendants, Appellees,
Appeal of PUERTO RICO PORTS AUTHORITY, Defendant.
 No. 89-1635.
 United States Court of Appeals,
First Circuit.
 Heard Nov. 2, 1989.
Decided Jan. 5, 1990.
 
 1
 Francisco Agrait Oliveras, Hato Rey, P.R., for appellant.
 
 
 2
 Alex Gonzalez, San Juan, P.R., for appellees.
 
 
 3
 Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.
 
 
 4
 FUSTE, District Judge.
 
 
 5
 Puerto Rico Ports Authority ("PRPA"), the defendant below, appeals the district court's dismissal of its third-party complaint against Alonso & Carus Iron Works and its insurer, National Insurance Company ("Alonso & Carus"). Essentially, PRPA raises two issues. First, PRPA claims the district court erred in not giving res judicata effect to a local court ruling that denied the identical motion to dismiss granted by the federal district court. Second, PRPA argues that the district court erred in finding the third-party complaint time-barred under local law. We affirm.
 
 I. Background
 
 6
 This action was originally filed in the federal district court of the Virgin Islands, Division of St. Croix, by Angel Felix Davis whose wife, Maria, died in the crash of a Vieques Air Link ("VAL") plane on August 2, 1984. The original complaint alleged negligence against VAL and PRPA, claiming that the gasoline supplied and pumped into the aircraft from gasoline tanks belonging to PRPA contained a dangerous level of water and contributed to the accident. On February 12, 1987, PRPA filed a third-party complaint against appellees, Alonso & Carus. Alonso & Carus installed the gasoline tanks at the Vieques airport in December of 1975 pursuant to a contract with PRPA. PRPA's third-party complaint claimed that, should the court conclude the tanks contained water and the contaminated gasoline proximately caused the accident, then Alonso & Carus must indemnify PRPA for damages and costs paid to plaintiff.
 
 
 7
 While this action was pending in federal court, the parties were also engaged in nearly identical litigation in the local forum. On May 9, 1988, the Superior Court of Puerto Rico, San Juan Section, denied a motion to dismiss submitted by Alonso & Carus. In the local motion, Alonso & Carus argued that PRPA's third-party complaint was time-barred by the provisions of Articles 1809 and 1483 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5148 and 4124. Back in federal court, Alonso & Carus also had a motion to dismiss pending against PRPA, identical to the motion denied at the local level. PRPA immediately requested the district court to recognize the local court resolution as res judicata against the motion to dismiss filed by Alonso & Carus in federal court. On May 19, 1989 the district court rejected PRPA's res judicata argument and granted the motion. PRPA now appeals both determinations.
 
 II. Res Judicata
 
 8
 Federal courts must honor the res judicata effects of state court judgments. 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4469 (1981). Under 28 U.S.C. § 1738, "[t]he records and judicial proceedings of any court" of "any State, Territory, or Possession of the United States" shall have "the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Thus, a federal court must give the state court judgment the full faith and credit that it would have in the courts of the state, or territory, in which it was entered. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Our inquiry, then, will focus on the res judicata and collateral estoppel doctrines as promulgated under the laws of the Commonwealth of Puerto Rico.
 
 
 9
 The res judicata doctrine has been adopted in Puerto Rico in Article 1204 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3343.[1] This section was interpreted by the Supreme Court of Puerto Rico in the case of Bolker v. Superior Court; Sosa, Int., 82 P.R.R. 785 (1961). The Supreme Court found that for res judicata to apply, the prior judgment must have been final, must have been rendered by a court with proper jurisdiction, and must have been on the merits. Id. at 792, 798. The Court has also found Article 1204 to encompass the doctrine of collateral estoppel, holding that when a fact essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties. Pereira v. Hernandez, 83 P.R.R. 156, 161 (1961); accord A & P Gen. Contractors v. Asoc. Cana, 110 D.P.R. 753 (1981); Secretary of Labor v. Velez, 86 P.R.R. 555 (1962); Millan v. Caribe Motors Corp., 83 P.R.R. 474 (1961); Viera v. Racing Comm'n, 81 P.R.R. 688 (1960).
 
 
 10
 Consequently, the propriety of relying on the doctrines of res judicata or collateral estoppel depends on whether the prior Superior Court resolution denying the motion was an entry of judgment and therefore "final." We agree with the district court's finding that it was not. The Supreme Court of Puerto Rico has interpreted "final judgment" to connote a decision that "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution, what has been determined." Dalmau v. Quinones, 78 P.R.R. 525, 530 (1955); accord Rieder v. Torruella, 48 P.R.R. 846, 850 (1935); Cortes Roman v. Commonwealth, 106 D.P.R. 504 (1977).
 
 
 11
 At the time the Superior Court issued its resolution the parties could neither appeal the decision nor demand its execution. The case simply continued towards a resolution on the merits. Thus, when the PRPA filed the subsequent motion to dismiss in district court, the parallel Superior Court case was still ongoing and not final. The district court, therefore, correctly refused to consider the Superior Court ruling res judicata against the motion filed before it.
 
 II. Statute of Limitations
 
 12
 The substance of PRPA's next argument is that the district court applied the wrong Civil Code provision to govern the limitations period for filing a cause of action against Alonso & Carus.[2] We begin by reviewing Article 1809 of the Civil Code, 31 L.P.R.A. § 5148, which addresses defects in construction. This provision affords injured third parties a cause of action if filed "within the legal period."[3] Although Article 1809 does not define the length of the "legal period," we have affirmed the District Court of Puerto Rico's determination that the applicable time period may be drawn from Article 1483 of the Civil Code. Oliveras-Salas v. Puerto Rico Highway Authority, 884 F.2d 1532 (1st Cir.1989).
 
 
 13
 Referring to Article 1483, unfortunately, does not end the inquiry. Article 1483 provides for two limitations periods, one for an action based on the construction defect and one for an action based on the contract between the parties.[4] The controversy on appeal is obvious: PRPA argues that its claim against Alonso & Carus arises from obligations enumerated in the contract, and therefore the fifteen-year period applies; Alonso & Carus, on the other hand, claims that the contract terms are irrelevant and that the ten-year term applies, barring PRPA's claim. It was the latter position that the district court found persuasive. Upon further analysis, we too reach the same conclusion.
 
 
 14
 PRPA argues that the ten-year limitation period does not apply because the language of this provision of Article 1483 does not correspond to the substance of the complaint against Alonso & Carus. Because it claims defective installation instead of defective construction, PRPA argues that the district court should have applied the fifteen-year limitation period for actions charging noncompliance with the contract. We are not persuaded by PRPA's emphasis on semantics. The Supreme Court of Puerto Rico has interpreted Article 1483 to encompass a wide variety of defects. In Federal Ins. Co. v. Dresser Ind., Inc., 111 P.R.R. 125, 133 (1981), the Supreme Court found the defective installation of an elevator to constitute a "defect in construction" under Article 1483. As for other terms, the Court also held that the word "building" covers elevators, piping systems, and similar installations, even when they were constructed by others, if such installations are an important part of the work and are permanently attached to the building by the contractor. Id. The gas tanks, similarly, are such a permanent fixture of the facilities at the Vieques airport and, thus, fall squarely within the court's interpretation of this provision of Article 1483.
 
 
 15
 In addition, PRPA claims the ten-year limitation period inappropriate because the gas tanks have not "collapsed" as required by the code provision. Indeed, PRPA argues, they are still being used. The concept of "collapse" or "ruina" in Spanish, however, is not limited to total physical destruction. "Ruina" includes "ruina total," the complete collapse of the structure; "ruina parcial," defects which endanger the structure or destroy an essential part of it; and "ruina funcional," defects in the structure or of an essential part of it which makes the structure unsuitable for its intended use. In Re San Juan Dupont Plaza Hotel Fire Litigation, 687 F.Supp. 716 (D.P.R.1988) (citing Maldonado Perez v. Las Vegas Dev., 111 P.R.R. 716, 718 (1981)).
 
 
 16
 In Maldonado, the Supreme Court of Puerto Rico confirmed that "serious defects," although not "threatening the stability of vital elements of the building," may still constitute "ruina;" and thus, "functional collapse" was a sufficient basis for invoking Article 1483. 111 P.R.R. at 718. The Court must examine the seriousness of the defect and the circumstances in which it arises in order to determine if a structure has "functionally collapsed." Id. In particular, factors such as threat to public safety, whether the defects render the work unfit for its planned purpose, and whether the defects "exceed the measure of imperfections that may be expected from a construction" help determine if the label "functional collapse" is appropriate. Id. at 719. If, indeed, water entered into the tanks and this fact contributed to the airplane's crash, then the defect is certainly "serious" enough to trigger the provisions of Article 1483. The leakage of water into the tanks, moreover, while not affecting the physical integrity of the tanks, did render them dysfunctional for their intended purpose. Thus, PRPA's claim fits within the Supreme Court of Puerto Rico's interpretation of the language of the construction defect provision of Article 1483.
 
 
 17
 Nevertheless, PRPA argues that the complaint against Alonso & Carus stems from its noncompliance with the terms of the contract and, therefore, the district court should have referred to the filing limitation period for contract actions, not construction torts. PRPA cites two contractual provisions allegedly breached: (1) the "workmanlike" execution clause, and (2) the "forever harmless" clause.
 
 
 18
 Under Clause 4.1. of the PRPA Alonso & Carus contract, Alonso & Carus, the contractor, agreed to "execute the contract in a satisfactory and workmanlike manner and in accordance with the plans, specifications and terms of the contract."[5] PRPA claims that since the contract obviously did not provide for water to enter the gas tanks, Alonso & Carus breached this provision.
 
 
 19
 The Supreme Court of Puerto Rico in Fed. Ins. Co. v. Dresser Ind., Inc., 111 P.R.R. 125, 140 (1981), emphasized that the fifteen-year period was a punitive exception to the ten-year liability period and as such should be interpreted restrictively. The Court held that the period should only be applied where specific contractual obligations have been breached. Id. We agree with the district court that the clause at issue here is a "general warranty" clause found to be either express or implied in all contracts. The Court in Fed. Ins. held that the fifteen-year period did not apply to these clauses. Id. The Court reasoned that if the fifteen-year period applied to these clauses, then the provision for a ten-year liability period would be superfluous in the language of Article 1483. Id.
 
 
 20
 The Court also concluded that the plaintiff must bear the burden of demonstrating the contractor's fault either by alleging a violation of a specific clause of the contract or by showing that a deviation from the specifications directly caused the "collapse" of the "building." Id. PRPA, however, has done nothing more than claim blindly that it is entitled to indemnification by Alonso & Carus by virtue of the contract. In the underlying complaint and opposition to the motion to dismiss, PRPA never referred to any specific contractual deviations or nonconformity by Alonso & Carus. In Federal Ins. Co., the Court cautioned against affording plaintiffs the "extraordinary" measure of extending the ten-year term based on inferences alone. Id. Consequently, the district court was correct in rejecting the general warranty clause of the PRPA Alonso & Carus contract as a basis for invoking the fifteen-year period of Article 1483.
 
 
 21
 PRPA next argues that neither limitation period in Article 1483 applies as Alonso & Carus was contractually obligated to indemnify PRPA forever for "all claims for property damage or personal injury" caused by "the use, occupancy and/or works performed under this agreement."[6] In Fed. Ins. Co., however, the Supreme Court held that any agreement to waive or reduce the terms established by Article 1483 is null and void as against public policy. 111 P.R.R. 125, 138 (1981).
 
 
 22
 The reason the Supreme Court of Puerto Rico has rejected alterations to the contractor's liability period is so that it may preserve the ten-year term provided for in Article 1483. The Court in Geigel v. Mariani, 85 P.R.R. 39, 49 (1962), explained that Article 1483 created a presumption of negligence against architects and contractors for defects discovered within the ten-year period. The presumption protects the owner of the building from nondiscoverable defects at the time of delivery which are actually attributable to nonperformance by the architect or contractor. Id. at 50. However, because of the force of this presumption, the Supreme Court has strictly applied the ten-year liability period in order to determine "the exact moment in which liability expires, avoiding actions that may arise concerning the specific origin of the damage alleged, long after completion of the work."[7] Rivera v. Las Vegas Dev. Co., Inc., 107 P.R.R. 425, 429 (1978); see also In Re Dupont, 687 F.Supp. 716, 729 (D.P.R.1988). In short, the Court is willing to tolerate the presumption as long as the defects may be traced to a time in which the contractor maintained control of, and responsibility for, the building; however, after the passage of time, the possibility increases that defects may result from the poor maintenance and repair of the owner. The Supreme Court found, however, that the duration of liability is a question to be determined by the legislature and not private parties. See Dupont, 687 F.Supp. at 729. We affirm, therefore, the district court's finding that the "forever harmless" clause was void and consequently could not support the application of a fifteen-year contract filing period.
 
 
 23
 Finally, we note that the Supreme Court of Puerto Rico in Rivera v. Las Vegas Dev. Co., Inc., 107 P.R.R. 425 (1978), held that the ten-year limitation period was a single term filing period; consequently, both the "ruina" and the institution of the suit must occur within ten years. See also Dupont, 687 F.Supp. at 729. Alonso & Carus completed the installation of the gasoline tanks at the Vieques airport on December 9, 1975. The VAL plane crash giving rise to plaintiff's claims occurred on August 2, 1984. PRPA filed the third-party complaint against Alonso & Carus on February 12, 1987, twelve years after the installation of the tanks. Thus, the district court was correct in dismissing PRPA's third-party complaint as time-barred.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the District of Puerto Rico, sitting by designation
 
 
 [1]
 Section 3343 reads as follows:
 Sec. 3343. Destruction of presumptions: res judicata
 Presumptions established by law may be destroyed by proof to the contrary, except in the case in which it is expressly prohibited.
 Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.
 In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.
 In questions relating to the civil status of persons, and in those regarding the validity or nullity of testamentary provisions, the presumption of the res adjudicata shall be valid against third persons, even if they should not have litigated.
 It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.
 
 
 [2]
 We note that a federal district court in a diversity action must apply the statute of limitations of the local forum in which it sits. Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The Supreme Court of Puerto Rico, in Febo Ortega v. Superior Court, 102 P.R.R. 506 (1974), held that the limitation of actions is not a procedural issue but substantive and therefore was governed by provisions in the Civil Code
 
 
 [3]
 The text of the statute reads as follows:
 Sec. 5148. Defects in construction
 Should the damages referred to in the two preceding sections arise from defects in construction, the third person who suffers may only claim damages of the architect, or, in a proper case, of the constructor, within the legal period.
 
 
 [4]
 The statute reads as follows:
 Sec. 4124. Liability of a contractor and architect for collapse of a building.
 The contractor of a building which may have been destroyed by reason of defects in the construction shall be liable for the losses and damages if said building should collapse within ten years, to be counted from the completion of the construction; and during the same time the same liability shall be incurred by the architect who may have directed the work if the collapse is due to defects in the ground or in the direction.
 If the cause should be the noncompliance of the contractor with the conditions of the contract, the action for indemnity may be brought within fifteen years.
 
 
 [5]
 Clause 4.1. in its entirety reads as follows:
 
 
 [4]
 1. Intent of the Plans and Specifications:
 The true intent of the plans and these specifications is to provide for the execution and completion of every detail of the work described herein and it is understood that the Contractor for all or any part will furnish all labor, material, equipment, tools, transportation and necessary supplies, such as may reasonably be required to execute the contract in a satisfactory and workmanlike manner and in accordance with the plans, specifications and terms of the contract. Any deviation from these requirements must be stipulated in the contract.
 
 
 [6]
 The clause in full reads:
 
 
 [7]
 11 Contractor's Responsibility
 The Contractor shall hold harmless the Authority and assume all responsibility for damages sustained by persons or property due to the carrying on of his work until final acceptance of the project or until release in writing by the Engineer.
 The Contractor agrees to save forever harmless the Authority from all claims for property damages or personal injury of any nature, or death to persons that may be caused by the use, occupancy and/or works performed under this agreement at the premises of the Authority.
 The Contractor shall defend any court or administrative action brought against the Authority for the aforementioned damages, injuries or death and shall pay any compensation or judgment resulting thereof.
 The Contractor shall maintain until final acceptance of the project insurances as follows: a) Public responsibility insurance policies up to $200,000 for damages sustained by a single person, $500,000 for damages in any given accident involving more than one person and $50,000 for property damages. b) Builder's Risk Insurance (Fire and Extended Coverage) on a 100% completed value basis for the insurance portion of the work.
 
 
 [7]
 This same rationale supports a restrictive application of the fifteen-year limitation term provided in Article 1483, discussed supra