**TABER PARTNERS I, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, INC., Defendant.**

**TABER PARTNERS I, Plaintiff and Counterdefendant,**

v.

**MERIT BUILDERS, INC., Defendant, Counterclaimant & Third-party Plaintiff,**

v.

**VICTOR TORRES & ASSOCIATES, INC. and Desarrollos Metropolitanos, Inc., Third-party Defendants.**

Civ. Nos. 91–1220 (JP), 91–1211 (JP).

United States District Court, D. Puerto Rico.

Feb. 8, 1995.

Ruben T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, PR, for plaintiff.

Nachman & Fernandez Sein, Santurce, PR, for defendant.

Edilberto Berrios Perez, Hato Rey, PR, for Victor Torres.

Humberto Guzman Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Desarrollos.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it third-party defendant's motion for summary judgment (docket No. 241), third-party plaintiff's opposition (docket No. 279), and the respective supplements to their motions.[1] The motion for summary judgment is predicated on issues of res judicata and collateral estoppel. After careful consideration of the arguments presented, and substantially for the same reasons set forth by the third-party plaintiff, the motion for summary judgment is hereby **DENIED** as explained below.

### I. UNCONTESTED FACTS

The necessary background facts which gave rise to this action were set forth by the Court in its Opinion & Order issued on February 3, 1995. The additional facts necessary to understand the third-party complaint are straightforward.

1) After Taber Partners I ("Taber") and Merit Builders, Inc. ("Merit") entered into a contract for the renovation and expansion of the Ambassador Plaza Hotel & Casino ("Ambassador"), Merit hired Desarrollos Metropolitanos, S.E. ("Desarrollos") as the concrete subcontractor for the project. Under the contract with Merit, Desarrollos was in charge of constructing the shell for the project's structure as well as performing the cement work. The contract between Merit and Desarrollos, known as the "Subcontract Agreement," contained the following language:

a. Subcontract Agreement, ¶ 13

In case the nature of the damages or defects of any particular work or works is such that, in the judgment of the Contractor it is not expedient to have the work corrected, the Contractor shall have the right to take such sums of money from the amount due to the Sub-

---

1. In addition to the docket numbers listed, the Opinion and Order addresses the arguments and issues presented in the following motions: docket Nos. 274, 278, 281, 283, and 288.

contractor as the Contractor considers fair and reasonable remuneration for the difference in value of the materials or work furnished from that specified, or for the damage to the completed work. The Subcontractor hereby agrees to save the Owner and Contractor harmless in connection with any claim, loss and/or damage that the Owner and/or the Contractor may suffer by reason of defects in the construction, materials and/or workmanship furnished by the Subcontractor hereunder, and the Subcontractor hereby consents to be made a party defendant in any action brought against the Contractor, involving work performed or materials furnished by the Subcontractor. The Subcontractor further agrees to save the Owner and the Contractor harmless in connection with any judgment that may be rendered against Owner and/or Contractor (including costs and attorney's fees) in any of the cases mentioned.

b. Subcontract Agreement, ¶ 1

Subcontractor agrees to furnish and pay for all materials, labor, equipment, tools, appliances, licenses, permits and everything necessary for the proper completion of the Work described in paragraph 2 hereof, for the: HOWARD JOHNSON PLAZA HOTEL EXPANSION, hereinafter called the Owner, in accordance with the General Conditions, Special Conditions, and supplementary General Conditions of the Owner and the Contractor in accordance with the Drawings and Specifications prepared by MARVEL, FLORES, COBIAN & ASSOCIATES, hereinafter called the Architect; and listed in Exhibit "A" to this Agreement, all of which General Conditions, Special Conditions, Supplementary General Conditions, Drawings and Specifications (hereinafter referred to as "Contract Documents") form a part of the Contract between the Contractor and the Owner dated July 6, 1989, and hereby made a part of this Agreement. Subcontractor agrees to be bound to the Contractor by the terms of the Agreement between the Contractor and the Owner and by the Contract Documents and to assume toward the Contractor of all of the obligations and responsibilities that the Contractor, by those Instruments, assumes toward the Owner.

2) After Taber initiated the instant action against Merit and the Insurance Company of North America, Inc. ("INA") for apparent defects in the shell and concrete work of the Ambassador's tower structure, Merit filed a third-party complaint against Desarrollos and Víctor Torres & Associates ("VTA"). Pursuant to paragraphs one and thirteen of the Subcontract Agreement, *see infra,* Merit alleged in its complaint a right to complete indemnification from Desarrollos in the event that a jury verdict is rendered against it in this action regarding apparent defects in the shell structure and cement work. Desarrollos denied liability under the Subcontract Agreement, or that it performed defective shell and cement work. Furthermore, Desarrollos filed a counterclaim against Merit for One Hundred Eighty Five Thousand Six Hundred and Six Dollars with Thirty Cents ($185,606.30), allegedly owed for work performed and not paid under the Subcontract Agreement. Desarrollos also filed a counterclaim against Taber under Article 1489 of the Puerto Rico Civil Code, alleging that Taber, as owner of the project, is also liable to Desarrollos for the total amount owed by Merit.

3) On August 21, 1992, while the case at bar was under consideration by the United States Court of Appeals for the First Circuit on an unrelated issue of law, Desarrollos filed in Puerto Rico Superior Court a complaint against Merit and its insurance company, INA. *See Desarrollos Metropolitanos, S.E. v. Merit Builders, S.E.,* Civil No. KAC 92–1131(902). Neither Taber nor VTA were included in the superior court action. Desarrollos alleged in its complaint that it was owed by Merit One Hundred Eighty Five Thousand Six Hundred and Six Dollars with Thirty Cents ($185,606.30) for work performed under the Subcontract Agreement. Desarrollos also sought a declaratory judgment to the effect that Merit waived any and all claims it might have against Desarrollos for work performed under the Subcontract Agreement. Desarrollos based its claims on

the decision by the Puerto Rico Supreme Court of Puerto Rico in *Constructora Bauzá v. García López*, 91 J.T.S. 99 (1991), where the court decided that a contractor is not liable for apparent defects in construction once an owner has accepted and paid for the work performed. Therefore, and by analogy, Desarrollos argued that the acceptance and payment of the work by Merit discharged it of any possible liability under the Subcontract Agreement. In its defense, Merit argued that Taber refused to pay for certain work performed claiming the existence of apparent defects in the structure's shell and cement work. Therefore, Merit maintained that it could not pay Desarrollos for their work until Taber's claims were resolved.

4) On November 23, 1993, the superior court entered partial summary judgment for Desarrollos, to have and recover from Merit One Hundred Eighty Five Thousand Six Hundred and Six Dollars with Thirty Cents ($185,606.30). The Court reasoned that pursuant to the decision in *Constructora Bauzá v. García López*, 91 J.T.S. 99 (1991), Merit waived its right to seek any compensation from Desarrollos involving any claim for apparent defects by accepting and paying every bill that Desarrollos presented. Therefore, the amount owed under the Subcontract Agreement was due and payable for work performed. The Court went on to add as dicta that Merit did not have a right to be compensated by Desarrollos with respect to the claims presented by Taber in the federal action. The Supreme Court of Puerto Rico affirmed the Judgment of the superior court, which is now final and unappealable.

## II. THE RULE 56 STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Brennan v. Hendrigan*, 888 F.2d 189, 191

(1st Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack*, 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan*, 888 F.2d at 191. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed. R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## III. RES JUDICATA AND COLLATERAL ESTOPPEL

Desarrollos' arguments are both simple and straightforward. In light of the

judgment rendered by the Puerto Rico Superior Court, which states that Merit cannot recover any compensation from Desarrollos for apparent defects in the shell and cement work of the Ambassador project, Desarrollos requests this Court to summarily dismiss with prejudice Merit's third-party complaint for indemnification. To evaluate Desarrollos's request for summary judgment, the Court must analyze the principles of res judicata and collateral estoppel in light of the particular facts of the case. When determining the preclusive effect of a state court judgment, a federal court applies the state law of preclusion. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Therefore, the Court will examine Puerto Rico's preclusion law to analyze Desarrollos' claim.

■ In a literal sense, "res judicata" means that something has been decided or adjudicated. Generally, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). However, when considering issues of preclusion in litigation, courts must keep foremost on their minds that res judicata and collateral estoppel are equitable principles created to promote fundamental and substantial justice. *See* 21 Fed.Proc., L.Ed. § 51:188 (citing *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148 (1917)). Since res judicata is an equitable principle, courts are "not bound to give res judicata effect to a previous judgment if an inequitable situation would thereby result." *Walsh v. Int'l Longshoremen's Assoc., AFL–CIO,* 630 F.2d 864, 875 (1st Cir.1980) (citing *Sweetheart Plastics v. Illinois Tool Works,* 439 F.2d 871 (1st Cir.1971); 1B Moore's Federal Practice ¶ 0.405[12] at 787). *See also Chestnut Hill Dev. Corp. v. Otis Elevator Co.,* 739 F.Supp. 692, 696–97 (D.Mass.1990) (even where technical requirements of res judicata have been established, a court may refuse to apply the doctrine).

■ In Puerto Rico, Article 1204 of the Civil Code establishes the preclusive effect given to judgments, and therefore the principles of res judicata and collateral estoppel. *See,* 31 L.P.R.A. § 3343. Three elements are necessary to establish res judicata, to wit: 1) judgment on the merits, which is final and unappealable, 2) the perfect identity of things or cause, and 3) the perfect identity of parties and the capacity in which they acted. *Vega Arriaga v. J.C. Penney, Inc.,* 658 F.Supp. 117, 120 (D.P.R.1987), *see also Felix Davis v. Vieques Air Link,* 892 F.2d 1122, 1124 (1st Cir.1990). Since it is undisputed that the Puerto Rico Supreme Court affirmed the decision of the superior court, the first element for a finding of res judicata has been satisfied.

■ The second element to consider, the perfect identity of things or cause, presents some interesting facts to consider. Both actions involve the renovation and expansion of the Ambassador Plaza Hotel & Casino as their factual background. In both actions the alleged apparent defects in the shell and concrete work performed are or were an issue. Also, in both actions the defense created by the *Constructora Bauzá* decision was raised as an alleged bar to liability under a construction contract. However, the similarities end there. To determine from these facts whether the perfect identity of things or cause exists, it is necessary to establish whether both causes of action stem from a common nucleus of operative facts. *Gonzalez v. Banco Central Corp.,* 27 F.3d 751, 755 (1st Cir.1994). Moreover, in making the necessary assessment, courts must be pragmatic in their approach and analysis. *Id.* at 756.

■ In superior court, Desarrollos filed a complaint for breach of contract. Desarrollos alleged in its complaint that Merit owed it money for work performed under the Subcontract Agreement. Desarrollos also sought a determination that Merit could not obtain compensation from them under the contract. While admitting that the money was due under the contract, Merit defended its refusal to pay by alleging that it had not received payment from Taber for the work performed. Since Taber did not pay Merit under the contract alleging apparent defects in the shell and cement work, Merit argued

that it was not obligated to pay Desarrollos the money owed under the contract until Taber's claims were resolved. Merit also raised the fact that it had an indemnity cause of action filed in federal district court as a defense to Desarrollos' breach of contract claim. Deciding that Merit could not withhold payment on work performed by Desarrollos, the superior court entered partial summary judgment in Desarrollos' favor to have and recover the money withheld by Merit under the Subcontract Agreement. Furthermore, the superior court went on to state that based on the doctrine established in the *Constructora Bauzá* decision, Merit could not receive any compensation from Desarrollos. The decision of the superior court constitutes dicta at least as to its declaration that Merit could not recover against Desarrollos in a cause of action for indemnity since the issue of indemnity was not and could not be before the superior court without the inclusion of other necessary parties; i.e., Taber.

In contrast, the cause of action in the case at bar is for indemnification, not for breach of contract or for a direct action to recover damages from Desarrollos. Merit does not allege that the work performed by Desarrollos under the Subcontract Agreement was defective, nor is Merit alleging that Desarrollos should not be paid under the contract. What Merit is arguing in its third-party complaint, however, is that if Taber obtains a jury verdict against it for apparent defects in the shell and cement work in the tower structure, then under paragraph 13 of the Subcontract Agreement Desarrollos has an obligation to indemnify Merit. Therefore, as the facts demonstrate, the cause of action alleged in the third-party complaint is different from the cause of action presented and litigated in Puerto Rico Superior Court.

In essence, Merit had two possible causes of action against Desarrollos under the Subcontract Agreement. First, Merit could sue Desarrollos for an alleged failure to perform under the contract; i.e., build the shell structure and perform the cement work in a workmanlike and safe manner. Second, Merit could sue Desarrollos, as it did in the case at bar, for indemnification in the event of an adverse judgment specifically dealing with apparent defects in Desarrollos' work. The indemnity cause of action also arises under the contract, pursuant to paragraph 13 of the agreement. Since the issue of indemnification was not properly established before the superior court, this Court understands that the res judicata effects from the superior court judgment, therefore, cover only Merit's first possible cause of action as to a direct recovery by Merit for a breach of the Subcontract Agreement.

The reasons which convinced the Court that the indemnity cause of action presented by Merit in this litigation were not before the superior court are twofold. First, it is impossible to overlook one important fact: Taber, the plaintiff in the case at bar, was not a party in the superior court action. Taber is an indispensable party to resolve the issue of indemnity because Taber has the burden of proving that the work performed in the shell and cement work of the tower structure suffers from apparent defects. In fact, Merit could not pragmatically allege as a defense to Desarrollos' breach of contract claim in the superior court action that the shell and cement work were defective. If it had done so Merit would have been collaterally estopped from arguing in the case at bar as a defense to Taber's claims that the shell and cement work are not defective. Second, Merit's cause of action against Desarrollos for indemnity will not come to fruition until Taber is able to prove the alleged apparent defects. Therefore, the superior court judgment could not affect the third-party complaint herein as the same was premature as to the indemnity cause of action, and lacked an indispensable party to resolve the issue. The law is clear in that:

> "A cause of action for indemnity does not arise until at least judgment is rendered against the indemnitee, if not until actual payment of the judgment."

*Roberts v. Consolidated Rail Corporation,* 893 F.2d 21, 24 (2d Cir.1989); *See also Hercules, Inc. v. Stevens Shipping Co., Inc.,* 698 F.2d 726, 731 (5th Cir.1983); *Weston v. Glove Slicing Machine Co.,* 621 F.2d 344, 346 (9th Cir.1980).

To summarize, the judgment in superior court only decided how much Merit would have to pay Desarrollos under the Subcontract Agreement, and that Merit could not directly recover from Desarrollos in an action for apparent defects. The case at bar and the superior court action dealt with different issues. We are dealing here with the contract between Merit and Taber, and Merit's obligations under said contract. As a result of said determination, Merit might have a cause of action against Desarrollos. The superior court cause of action dealt exclusively with the Merit and Desarrollos contract and Desarrollos' ability to enforce Merit's payment obligations under the contract. Therefore, and as stated before, this Court finds that the Puerto Rico Superior Court did not resolve the indemnity cause of action.

■ The third and final element to be considered, the perfect identity of parties and the capacity in which they acted, is also not satisfied. First, in the superior court action, Desarrollos sued Merit. Therefore, Merit acted as a defendant in a breach of contract action for failure to pay. In the third-party complaint in the case at bar, Merit is suing Desarrollos, and therefore acting as a third-party plaintiff seeking to establish a possible cause of action for indemnification. Furthermore, Taber was not a party in the superior court action. Taber, and the contract between Merit and Desarrollos, are an integral part of Merit's indemnity claim. The indemnity issue simply cannot be decided without Taber's presence. Second, the capacity in which Merit appears in both actions is completely different. In fact, Merit wears two separate yet important and distinctive hats in the two actions in question.

Since the mere title of "plaintiff" or "defendant" will not establish the essence of a party's role before a court, it is important to understand the posture and reasons behind a party's argument. Merit acted in the superior court action only as a party defending a breach of contract claim for failure to pay. Moreover, Merit at no point tried to establish, nor was it required to establish, that Desarrollos' work product was defective. In the case at bar, Merit is only claiming that, if Taber is successful in proving the apparent defects it alleges, then Desarrollos has a contractual obligation to indemnify Merit. The capacity in which Merit acted in both actions is therefore different enough to warrant a finding by this Court that no perfect identity of capacity exists between the two actions in question which would favor a finding of res judicata.

As explained before, the doctrine of collateral estoppel in Puerto Rico is also encompassed within Article 1204 of the Puerto Rico Civil Code. In general, the doctrine of collateral estoppel establishes that an issue which has been previously litigated and resolved between the same parties cannot later be disputed in a subsequent action. 21 Fed. Proc.L.Ed. § 51:212. Since the Court has already established in the prior analysis that the indemnity issue was not and could not be litigated in superior court, then the doctrine of collateral estoppel cannot serve as the basis for a motion for summary judgment.

■ In light of the analysis presented, the Court cannot dismiss Merit's third-party complaint on the basis of either res judicata or collateral estoppel. Intrinsic to the Court's ruling, however, is the fact that the superior court proceedings did not afford Merit the opportunity to litigate fully the issue of indemnity. Therefore, even if Desarrollos had been successful in establishing the technical requirements for res judicata, equity in this case would require the Court not to grant res judicata effect to the judgment of the superior court and allow Merit's claim to proceed.

Moreover, it is clear to the Court that Desarrollos has unflinchingly tried to take advantage of the filing of an "innocuous" action in superior court in order to induce that court to enter a declaratory judgment pretending to set jurisprudence detrimental to Taber in the case at bar regarding the applicability of the *Constructora Bauzá* decision. Obviously, the superior court decision as to the alleged applicability of the *Constructora Bauzá* decision benefitted both Desarrollos and Merit as to the claims presented by Taber in the present action. This is a reproachable attempt by both Desarrollos and Merit since Taber was not even a party to the superior court action and therefore

could not defend itself. Merit then tried to take advantage of the superior court partial judgment, but failed in its attempt. *See* February 3, 1995, Opinion and Order (docket No. 293). Regardless of this "ingenious" attempt at subverting the present action, Merit is still entitled to litigate its indemnity claim against Desarrollos.

## IV. CONCLUSION

The doctrines of res judicata and collateral estoppel do not represent an obstacle to the litigation of Merit's third-party complaint against Desarrollos for indemnity. Apart from the technical requirements necessary to establish the preclusionary effect of these doctrines, equity does not allow this Court to obviate the fact that Merit did not have a full opportunity to litigate its indemnity action in superior court in the absence of Taber. Therefore, Desarrollos' motion for summary judgment is hereby **DENIED.**

IT IS SO ORDERED.