187 F.3d 30 (1st Cir. 1999)
 ROBERT E. SCHNEIDER, JR., ET AL., PLAINTIFFS, APPELLEES,
v.
COLEGIO DE ABOGADOS DE PUERTO RICO DEFENDANT, APPELLANT.
ROBERT E. SCHNEIDER, JR., ET AL., PLAINTIFFS, APPELLEES,
v.
SECRETARIES OF JUSTICE AND TREASURY OF PUERTO RICO, DEFENDANTS, APPELLANTS.
ROBERT E. SCHNEIDER, JR., ET AL., PLAINTIFFS, APPELLEES,
v.
COLEGIO DE ABOGADOS DE PUERTO RICO, ET AL., DEFENDANT, APPELLANT.
FUNDACION COLEGIO DE ABOGADOS, DEFENDANTS, APPELLEES.
ROBERT E. SCHNEIDER, JR., ET AL., PLAINTIFFS, APPELLANTS,
V.
COLEGIO DE ABOGADOS DE PUERTO RICO, ET AL., DEFENDANTS, APPELLEES.
 Nos. 98-1071, 98-1073, 98-1618 and 98-1619
 U.S. Court of Appeals, First Circuit
 Heard November 3, 1998
Decided July 15, 1999
 
 Robert E. Schneider, Jr., pro se and for Hector Ramos-Diaz.
 Carlos A. Rodriguez-Vidal, with whom Carlos Lugo-Fiol, Solicitor General, Edda Serrano Blasini, Deputy Solicitor General, Vanessa Ramirez, Assistant Solicitor General, and the Department of Justice, Puerto Rico, were on brief, for the Colegio de Abogados de Puerto Rico and the Secretaries of Justice and Treasury of the Commonwealth of Puerto Rico.
 Salvador Antonetti-Zequeira for the Justices of the Supreme Court of Puerto Rico.
 Before Lynch, Circuit Judge, Hall, Senior Circuit Judge,* and Lipez, Circuit Judge.
 Per Curiam.
 
 
 1
 After two decades of litigation in the Puerto Rico and federal courts, plaintiffs Robert E. Schneider, Jr., and Hector Ramos-Diaz succeeded in invalidating the use of bar dues for ideological purposes by the mandatory bar of Puerto Rico, the Colegio de Abogados. The action in the case at hand was a civil rights action; the successful claims were of constitutional dimension. Other claims were less successful. The district court, acting pursuant to 42 U.S.C. § 1988, awarded plaintiffs $244,848.12 in attorney's fees plus costs and a refund in unrefunded compulsory dues. The Colegio and other defendants (collectively, "the Colegio") appeal. Schneider and Ramos cross appeal, saying, inter alia, that they were entitled to even more. We affirm in part and reverse in part.
 
 
 2
 The long history of this hard-fought litigation will not be repeated here. It is adequately told in the following opinions: Schneider v. Colegio de Abogados de Puerto Rico, 546 F. Supp. 1251 (D.P.R. 1982); In re The Justices of Supreme Court of Puerto Rico, 695 F.2d 17 (1st Cir. 1982); Schneider v. Colegio de Abogados de Puerto Rico, 565 F. Supp. 963 (D.P.R. 1983), vacated by Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d 32 (1st Cir. 1984); Schneider v. Colegio de Abogados de Puerto Rico, 572 F. Supp. 957, 957-58 (D.P.R. 1983); Schneider v. Colegio de Abogados de Puerto Rico, 670 F. Supp. 1098 (D.P.R. 1987); Schneider v. Colegio de Abogados de Puerto Rico, 682 F. Supp. 674 (D.P.R. 1988), rev'd in part by Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1st Cir. 1990); Schneider v. Colegio de Abogados de Puerto Rico, 947 F. Supp. 34 (D.P.R. 1996); and Schneider v. Colegio de Abogados de Puerto Rico, No. 82-1459 (D.P.R. Aug. 7, 1997).
 
 
 3
 The Colegio protests that there should have been no award at all for two reasons. First, Schneider was representing himself as well as Ramos and this, the Colegio says, makes Schneider a pro se attorney-plaintiff who may not receive fees under the rule of Kay v. Ehrler, 499 U.S. 432, 437-38 (1991). In addition, the Colegio argues, plaintiffs are not prevailing parties. In any event, the Colegio says, the fee award is simply too high for a number of reasons.
 
 
 4
 Questions of law regarding the award of attorney's fees are reviewed de novo. See Williams v. Hanover Housing Auth., 113 F.3d 1294, 1297 (1st Cir. 1997). Otherwise, the award is reviewed with deference and "will be disturbed only for mistake of law or abuse of discretion." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 858 (1st Cir. 1998).
 
 
 5
 We affirm the award of attorney's fees plus costs and the refund of unrefunded dues, except for those fees and costs associated with the proceedings in the courts of the Commonwealth of Puerto Rico that took place before the filing of this federal lawsuit. As to that limited amount of fees and costs, totaling $13,872.20, the court reverses and vacates.
 
 
 6
 The first question is whether any fees should be awarded in light of the fact that attorney Schneider was a plaintiff as well as counsel. Here, Ramos is a plaintiff and Schneider also represented Ramos; the fees incurred by plaintiffs are essentially the same whether or not Schneider was also a plaintiff. The Colegio does not argue otherwise. Thus, in our view, the prohibition in Kay against awarding attorney's fees to an attorney pro se litigant does not apply. See Kay, 499 U.S. at 437-38. We do not reach the issue of whether plaintiffs would have had difficulty in obtaining other counsel, a matter on which the record is barren of evidence.
 
 
 7
 The second question is whether plaintiffs are prevailing parties given the partial success of their claims. On balance, we conclude that they are prevailing parties given their success in invalidating the payment of mandatory bar dues for ideological activities of the bar. See Farrar v. Hobby, 506 U.S. 103, 109 (1992) (explaining that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit") (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (internal quotation marks omitted)).
 
 
 8
 The third question is whether attorney's fees may be awarded to plaintiffs for work done in the Commonwealth courts before the filing of the federal lawsuit.The district court's attempts to find this situation identical to abstention by a federal court after a federal claim has been filed and to further characterize the Puerto Rico proceedings "as a necessary prelude to the federal action" are in error, both as a matter of law and of fact. Schneider v. Colegio de Abogados de Puerto Rico, No. 82-1459, slip op. at 4-5, (D.P.R. Aug. 7, 1997) (emphasis added). The correct test is articulated in Webb v. Board of Education, 471 U.S. 234 (1985): pre-suit fees may be awarded under 42 U.S.C. § 1988 only for "discrete" work "that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached." Id. at 243. After all, the statutory language in § 1988 permits an award of attorney's fees only "[i]n any action or proceeding to enforce a provision of section[] . . . 1983." 42 U.S.C. § 1988(b) (emphasis added). No federal claims were raised in the Puerto Rico proceeding and plaintiffs do not meet the Webb test.
 
 
 9
 The next question is whether the overall fee award is excessive. The district court found that the claims on which the plaintiffs prevailed were "reasonably related" to those on which the plaintiffs lost, and the court therefore declined to reduce the overall award on the basis of plaintiffs' limited success. Although the question is close, we think that the district court properly found an adequate relationship between the successful and unsuccessful claims. See Hensley, 461 U.S. at 440 (noting that an award of attorneys' fees based on related claims should not be reduced merely because the plaintiff did not prevail on every claim). As to the remainder of the defendants' objections and as to plaintiffs' cross appeal, there is no showing of mistake of law, clear error of fact, or abuse of discretion by the district court.
 
 
 10
 For these reasons, the judgment is affirmed in part, reversed in part, and the judgment is modified to reduce the attorney's fees awarded from $244,848.12 to $230,975.92 (with interest from September 22, 1988, as per the district court's final judgment).
 
 
 11
 Costs to plaintiffs.
 
 
 
 Notes:
 
 
 *
 Of the Ninth Circuit, sitting by designation.
 
 
 
 12
 LIPEZ, Circuit Judge, Concurring.
 
 
 13
 Although I agree with the results arrived at by my colleagues in their per curiam opinion, I wish to explain more fully the history of this case and my rationale for the Conclusions we reach. This case is the culmination of a two decade long odyssey of litigation that has engaged thousands of hours of attorney and court time, raised important constitutional issues, and engendered strong feelings among the parties. Under these circumstances, I think it is appropriate to offer an explanation that hopefully will enhance an understanding of the issues we have addressed and avoid further litigation.
 
 I.
 Litigation History
 
 14
 The Colegio de Abogados de Puerto Rico ("Colegio"), Puerto Rico's unitary bar association, instituted disciplinary proceedings in the Supreme Court of Puerto Rico in 1977 against ninety-nine attorneys for failure to pay their annual dues. All but two, Robert E. Schneider, Jr. and Heector R. Ramos-Diaz, paid the dues. As a defense to the disciplinary proceedings, Schneider and Ramos argued[1] that the statute establishing the Colegio in its modern form, Law Number 43, 4 L.P.R.A. § 771, as amended, exceeded the authority of the Puerto Rico legislature, and that compelled membership in the Colegio violated their rights of free speech and association under the Constitution of the Commonwealth of Puerto Rico.[2] Schneider and Ramos alleged that bar dues[3] were being used to fund ideological activities outside the legitimate scope of a bar association. A special master was appointed by the Court to receive evidence, and after several years of proceedings (during which Schneider served as counsel for himself and Ramos), the Supreme Court of Puerto Rico issued an opinion on April 5, 1982. Colegio de Abogados de Puerto Rico v. Schneider, 112 D.P.R. 540, 12 T.P.R. 676 (P.R. 1982) (Colegio I).
 
 
 15
 The Court ruled that Law 43 was a valid exercise of legislative power and that compulsory membership in the Colegio was constitutional under the Puerto Rico Constitution. Holding that it had plenary power to shape rules governing Colegio membership, the Court ordered the Colegio to institute a new process permitting attorneys to Dissent from the use of their dues for ideological activities, including the establishment by the next dues period of an independent review board to pass on controversies arising over activities funded from dues. Dissenters' dues would be held in escrow until then. See 12 T.P.R. at 695. In passing on the constitutionality of the Colegio's use of compulsory dues for ideological purposes, and in shaping the remedy, the Court based its rulings on Dissenters' rights arising under the Puerto Rico Constitution, not the federal Constitution. However, it stated that "the sense of the freedom of speech clause contained in Art. II, Sec. 4 of the Constitution of Puerto Rico is not narrower than that given by the United States Supreme Court to the First Amendment in this context," id. at 692, and relied heavily on federal precedent in its Discussion, see id. at 689-94. The Court gave Schneider and Ramos fifteen days to pay their dues or be suspended from the practice of law. Id. at 695. Notwithstanding the promised procedure for objecting to Colegio activities, Schneider and Ramos refused to pay dues, and were disbarred on June 3, 1982.
 
 
 16
 On June 9, 1982, Schneider filed a complaint on behalf of Ramos and himself[4] in federal district court alleging that the Colegio, its Foundation, the Secretaries of Justice and Treasury of Puerto Rico, and the Justices of the Supreme Court of Puerto Rico violated their civil rights pursuant to 42 U.S.C. § 1983. Responding to assorted motions filed by the parties, the district court ruled on September 13, 1982, inter alia, that plaintiffs' challenge to compulsory Colegio membership and to the use of dues and stamp revenues[5] for ideological purposes stated a cause of action not barred by res judicata or collateral estoppel principles, that abstention was not appropriate, and that the Justices of the Supreme Court of Puerto Rico were immune from damages but not from declaratory and injunctive relief. See Schneider v. Colegio de Abogados de Puerto Rico, 546 F. Supp. 1251 (D.P.R. 1982) (Torruella, J.[6]) (Schneider I).
 
 
 17
 During the pendency of the proceedings in the district court, the Colegio, its Foundation, and the Justices of the Supreme Court of Puerto Rico submitted petitions for a writ of mandamus to this court, asking that we order the district court to expedite its decision or dismiss the action. Two days after the district court issued its opinion, we entertained oral argument on the petitions for mandamus (now reduced to seeking dismissal), and we modified the court's decision sub nom. In re The Justices of the Supreme Court of Puerto Rico, 695 F.2d 17 (1st Cir. 1982) (Schneider II). We held that the Justices were entitled to a writ of mandamus requiring the district court to dismiss claims against the Justices concerning compulsory bar membership or compulsory payment of bar dues because the Justices had only a neutral, adjudicatory role with respect to those claims. See id. at 25. We further held that the Justices should remain "purely nominal parties" with respect to challenges to the use of stamp revenues because of their administrative responsibilities over the stamp program. Id. at 27. The request of the Colegio and its Foundation for mandamus relief was denied. See id.
 
 
 18
 In December 1982, in compliance with the earlier order of the Supreme Court of Puerto Rico, the Colegio adopted a remedial refund procedure and informed that Court of its action. While the Supreme Court of Puerto Rico evaluated the remedy,[7] the district court held an evidentiary hearing on the merits of the proposal, followed by full argument and briefing. In June 1983, the district court issued a ruling characterizing the Colegio's remedy as a "sham, designed to forestall the adjudication of this case and the remedies to which Plaintiffs are entitled under the Laws and Constitution of the United States." Schneider v. Colegio de Abogados de Puerto Rico, 565 F. Supp. 963, 977 (D.P.R. 1983) (Schneider III). As noted by the district court, the proposal provided that, in order to retain a right to object to any activity funded by the Colegio, a general objection to funding ideological activities had to be voiced by a Dissenting member at the moment of paying dues. Members were then required to object specifically to individual activities within thirty days after they took place, and a Review Board of lawyers essentially selected by the Colegio's Board of Governors would review objections on a standard that defined "ideological activities" narrowly to mean activities "related to partisan politics." Id. at 975. If an objection was successful, the member who objected would receive a proportionate refund of dues; others who objected only generally to the use of their fees for ideological activities would receive notice of the outcome and would have to file claims individually within thirty days of notice in order to receive similar refunds. See id.
 
 
 19
 The court found the proposed remedy inadequate because it (1) failed entirely to address the issue of use of funds raised through sale of notarial stamps, (2) unconstitutionally required Dissenters to disclose their disapproval of specific activities, (3) was procedurally inadequate to protect the Dissenters, requiring excessive vigilance from them, and (4) used too narrow a definition of "ideological." Id. at 976-77. The court therefore declared various sections of Law 43 and related acts "as interpreted, enforced and applied" to be unconstitutional. Id. at 979-80. The court also enjoined all defendants (except the Justices) from taking any action against lawyers who failed to pay dues or fees to the Colegio "until such time as the Colegio ceases to engage in ideological and/or political activism," from collecting fees from the sale of forensic or notarial stamps, or from preventing anyone otherwise qualified from engaging in legal or notarial practice for failure to pay dues or fees or failure to be a member of the Colegio. Id. Plaintiffs Oreste Ramos, Romany and Souss (to whom the court limited, without explanation, its award) were awarded nominal damages of one dollar each. See id. at 980. The court subsequently refused to stay this judgment pending appeal. See Schneider v. Colegio de Abogados de Puerto Rico, 572 F. Supp. 957, 962 (D.P.R. 1983) (Schneider IV).
 
 
 20
 We vacated this decision sub nom. Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d 32, 40-43 (1st Cir. 1984) (Schneider V), reasoning that the court should have abstained from deciding the federal constitutional claims, and citing to cases in the line descended from Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941). We stated that "the district court should have stayed its hand in this case, pending final determination of the issues turning upon Puerto Rico law, as it is clear that completion of the remedial stage of [Colegio I] 'might avoid in whole or in part the necessity for federal constitutional adjudication; or at least materially alter the nature of the problem.'" 742 F.2d at 40 (quoting Harrison v. NAACP, 360 U.S. 167, 177 (1959)). We added that "[t]he argument for abstention is also greatly strengthened by several special factors" present in the case. Id. at 42. First, an action in the Commonwealth court was already pending. See id. Second, because the Supreme Court of Puerto Rico had inherent plenary power to shape the rules governing the bar, it could directly fashion relief, whereas a federal court was limited to striking down provisions. See id. at 42-43. Finally, we cited comity considerations: "the expertise, cooperation and goodwill of the Supreme Court of Puerto Rico will make much difference to the success of any remedy from whatever source over the long run. This fact alone suggests the need for restraint in these circumstances. . . . [W]hile we can appreciate the concerns of the district court, we think this matter must be approached with deliberation and full respect for the role of the judiciary of the Commonwealth of Puerto Rico." Id. at 43. The stamp issues were also held suitable for abstention, despite the fact that they were not addressed in Colegio I. See id. at 43-44. Finally, we recommended that the Supreme Court of Puerto Rico implement an interim remedy to protect the interests of the Dissenters: pending the resolution of both Commonwealth and federal proceedings, we suggested that 50% of Dissenting members' dues should be held in an escrow account managed by a neutral entity.[8] See id. at 44-45.
 
 
 21
 In the wake of our abstention ruling, the Supreme Court of Puerto Rico again held hearings to consider a remedy. In late 1984, the Court issued an order providing for the interim remedy we suggested, and then reinstated Schneider and Ramos to the practice of law in light of their consent to that remedy. After hearings, the Court issued an opinion outlining a permanent remedy. See Colegio de Abogados de Puerto Rico v. Schneider, 117 D.P.R. 504, 17 T.P.R. 610 (P.R. 1986) (Colegio II). The opinion established a list of non-objectionable activities (such as maintaining professional and ethical standards, advocating the rights and immunities of lawyers, establishing legal aid programs, and so forth), without offering a definition of "objectionable" activities. 17 T.P.R. at 630-31. It then provided that Dissenting attorneys could lodge a general objection to funding all "objectionable" activities, either at the time of paying annual dues or later during the year. Id. at 633. A portion of Dissenters' dues (15% for those objecting upon payment; proportionately less for mid-year Dissenters) would be reserved in a general escrow account. See id. at 634. Any member of the Colegio could raise objections to specific activities before a review panel of retired Commonwealth Judges, reviewable by the Supreme Court of Puerto Rico. If the review panel found the activity to be objectionable, a proportionate dues refund would be paid to the objector and to all those who lodged a general objection. See id. at 632-35. The costs and expenses of the use of Colegio facilities by third parties engaged in objectionable activities would be "subject to this remedy" if those parties did not cover those costs and expenses. Id. at 631. Proceeds from the sale of notarial and bar stamps were not to be used for objectionable activities. See id. at 636.
 
 
 22
 The Colegio then moved to dismiss the federal action as res judicata. The district court (per Torruella, by then a Circuit Judge, sitting by designation) rejected this argument, see Schneider v. Colegio de Abogados de Puerto Rico, 670 F. Supp. 1098, 1101 (D.P.R. 1987) (Schneider VI), for roughly the same reasons it gave earlier, in Schneider I, 546 F. Supp. at 1268-74 (a ruling not appealed and thus, the court held, the law of the case[9] ). 28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to judicial proceedings of any state, territory or possession (including the "Commonwealth" of Puerto Rico; see Felix Davis v. Vieques Air Link, 892 F.2d 1122, 1124 (1st Cir. 1990)) that those judgments would be given in the courts of the state, territory or possession from where the judgments were entered. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). Puerto Rico's res judicata rules require that "there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343 (quoted in Schneider VI, 670 F. Supp. at 1104).[10] The court found that the federal case concerned ongoing obligations to support the Colegio, whereas the Commonwealth case concerned only past obligations not met, thus disrupting the required identity. Collateral estoppel was inapplicable because the federal claims were not raised in the Commonwealth proceedings. Schneider VI, 670 F. Supp. at 1104.
 
 
 23
 Reaching the merits once again in a subsequent hearing, the district court found that the 1986 rule failed to adequately protect Dissenters' rights. See Schneider v. Colegio de Abogados de Puerto Rico, 682 F. Supp. 674 (D.P.R. 1988) (Schneider VII). The court found the rule's definition of "objectionable" activities too narrow. The rule stated that activities within "the Bar Association's purposes and ends which are germane thereto shall not be considered objectionable," and then stated that the Colegio's "functions and purposes" are "[t]o exercise . . . powers conferred by law or by the Supreme Court of Puerto Rico and any other incidental powers necessary or convenient for the ends of its creation and which are not in disagreement with the purpose and the law which creates the Bar Association." Id. at 687.
 
 
 24
 Most importantly, the parties had stipulated for this proceeding that objectionable Colegio activities, similar to those undertaken prior to 1983, had continued. See id. at 678. This stipulation induced the court to implement substantial remedial measures. The court found the 15% escrow reserve percentage to be arbitrary, and held that the Colegio had to base the escrow percentage on each year's projected budget, including a buffer allowing for error in the budget projections. See id. at 687-88. The court also found unacceptable the requirement that Dissenters object to specific activities, and the fact that those objections would be made public. See id. at 684, 689. The court allowed 60 days for the Commonwealth to institute a remedial rule. See id. at 691. Pending the adoption of such a rule, the defendants could not compel payment of dues or fees, use of stamps,[11] or membership in the Colegio. See id. Finally, the court awarded nominal damages of one dollar to each of the five plaintiffs. See id. at 692.
 
 
 25
 On appeal from the district court's ruling, we stayed the injunction prohibiting mandatory dues for six months "so that the Colegio may remain integrated while it attempts to correct its constitutional defects." See Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620, 623, 636 (1st Cir. 1990) (Schneider VIII). During this period, 100% of Dissenters' dues would be held in escrow. See id. at 636. After the six months had passed, the injunction was again stayed (this time by the district court) pending consideration of petitions for certiorari filed by the Colegio, Secretaries, and plaintiffs, all of which were denied by the Supreme Court on January 13, 1992. See 502 U.S. 1029 (1992).
 
 
 26
 The Supreme Court of Puerto Rico issued a new rule in June of 1992. The district court reviewed it, and, finding it inadequate in several respects, ordered the parties to submit the district court's amendments to the Supreme Court of Puerto Rico for its consideration. Order, No. 82-1459 (D.P.R. Nov. 19, 1992). Amended rules were issued by the Supreme Court of Puerto Rico in January 1993. Judge Torruella withdrew from the case on March 13, 1995. Following the recusal of all other Judges in the District of Puerto Rico, Judge James L. Watson was designated to sit in the District of Puerto Rico and assigned the case. He approved the new rule and held that the Dissenting attorneys were entitled to attorney's fees as prevailing parties under 42 U.S.C. § 1988. See Schneider v. Colegio de Abogados de Puerto Rico, 947 F. Supp. 34, 41, 42 (D.P.R. 1996) (Schneider IX). After holding hearings and receiving evidence, the court awarded attorney's fees in the amount of $244,848.12 plus interest to Schneider for his representation of Ramos and himself throughout the litigation, from 1977 onwards, including time spent in the disciplinary proceedings and post-abstention proceedings in the Supreme Court of Puerto Rico. See Memorandum, Opinion and Order, No. 82-1459 (D.P.R. August 7, 1997) (Schneider X, unpublished slip opinion). After issuance of a final Judgment, No. 82-1459 (D.P.R. March 23, 1998) (Schneider XI, unpublished), the parties resubmitted[12] notices of appeal.
 
 
 27
 On appeal, the Colegio and the Secretaries challenge the court's award of attorney's fees, claiming that Schneider was pro se and therefore not entitled to fees under § 1988, that he and Ramos were not prevailing parties, and that the award of fees was excessive, primarily because it compensated for hours spent in proceedings before the Supreme Court of Puerto Rico. They also claim the court erred in its order mandating a refund of dues to plaintiffs. In their cross-appeal,[13] Schneider and Ramos claim the court erred in failing to: (1) order a more extensive refund of dues; (2) address a seeming inconsistency in the rules governing who may object to specific Colegio activities; (3) adequately sanction the Colegio for its failure to notice plaintiffs of motions before the court and for its withdrawal of funds from the escrow account; (4) award fees to attorney Heector Marquez for his representation of several other plaintiffs in this litigation; and (5) hold the Justices of the Supreme Court of Puerto Rico liable for attorney's fees.
 
 II.
 The Appeal
 
 28
 A. Plaintiffs' entitlement to attorney's fees
 
 
 29
 Federal courts have consistently held that a pro se litigant who is not a lawyer is not entitled to attorney's fees under § 1988. See Lovell v. Snow, 637 F.2d 170 (1st Cir. 1981); see also Poythress v. Kessler, 475 U.S. 1129, 1129 (1986) (Burger, C.J., Dissenting from denial of certiorari) (citing lower court cases); Gonzalez v. Kangas, 814 F.2d 1411, 1411 (9th Cir. 1987) (citing cases). In Kay v. Ehrler, 499 U.S. 432 (1991), the Supreme Court extended this rule to pro se litigants who also happen to be lawyers. The Court stated that "it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988," id. at 436, and reasoned that Congress wished to encourage such an agency relationship so that parties would benefit from the detached objectivity of a disinterested advocate. See id. at 435-37.[14]
 
 
 30
 This case is not Kay because Schneider was involved in an attorney-client relationship throughout this litigation, representing both himself[15] and Hector R. Ramos-Diaz. The attorney-client relationship imposed an ethical obligation on Schneider to consider the interests of his client at all times and exercise his best professional judgment,[16] thus satisfying the concerns underlying Kay's requirement of an attorney-clientrelationship. Nevertheless, the Colegio argues that we should extend Kay to situations where an attorney-client relationship exists, but the attorney also has a personal interest in the outcome of the case. On this theory, the Colegio asserts that Ramos (and Schneider as well) should have sought counsel who was fully disinterested in the outcome of the case if they wished to avail themselves of attorney's fees under § 1988.
 
 
 31
 I disagree. If Ramos had retained an attorney admitted in Puerto Rico - that is, a member of the Colegio - to represent him, it could hardly be said that he had retained objective counsel. Any relief achieved by the litigation would have affected the rights and obligations of such an attorney in relation to the Colegio, just as it would those of his client Ramos; therefore, such an attorney's stake in the outcome of the matter would resemble that of a party. Moreover, such an attorney would have complied with the very rules that Ramos wished to challenge, and would thereby have taken a position directly contrary to that of his client.
 
 
 32
 Although Ramos could have sought counsel admitted only outside the jurisdiction,[17] he would have faced many practical difficulties. During most of the pendency of this case, an attorney who was not a member of the Colegio could only practice in the Commonwealth through courtesy of the Puerto Rico Supreme Court.[18] Prior to July 1, 1989, an attorney could not be admitted[19] to practice before the federal district court for the District of Puerto Rico without being "currently in good standing as an attorney admitted to practice before the courts of the Commonwealth of Puerto Rico." P.R. U.S. Dist. L.R. 201 (1987).[20] Therefore, any attorney from outside the jurisdiction would have had to obtain courtesy admission in the Commonwealth Court in order to argue even the federal case (at least prior to July 1, 1989). In addition, Ramos would have had to find an attorney from outside of Puerto Rico proficient in Spanish and competent to deal with issues of Commonwealth constitutional law to function effectively in the Commonwealth Court proceedings.
 
 
 33
 I believe the challenge of finding "independent" counsel with fully objective judgment capable of competently handling the entirety of the case, and gaining his or her admission to practice before the Commonwealth and federal courts, would constitute an unreasonable burden on Ramos in the pursuit of his legal claims. If "Congress was interested in ensuring the effective prosecution of meritorious claims" when it enacted § 1988, as the Supreme Court stated in Kay, 499 U.S. at 437, surely it did not envision requiring plaintiffs in the position of Ramos to seek disinterested counsel under circumstances that would make such a requirement antithetical to the effective prosecution of their claim. I therefore conclude that Schneider's party status, on the unusual facts of this case, does not preclude an award of attorney's fees.
 
 
 34
 B. Schneider's and Ramos' status as prevailing parties under 42 U.S.C. § 1988
 
 
 35
 The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, as amended, 42 U.S.C. § 1988(b), provides that:
 
 
 36
 "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."
 
 
 37
 The Colegio and Secretaries argue that the relief obtained by plaintiffs consisted mainly of an award of nominal damages, which "did not materially alter the relationship between the plaintiffs and the Colegio and the Secretaries," and left the outcome of the litigation as a whole "at most a minimal success" for plaintiffs. The Colegio and Secretaries contend that the primary "relief sought in this case was clearly to convert the Colegio into a voluntary association, and shield the plaintiffs from the risk of disbarrment for their continued refusal to pay dues to the Colegio." This argument conflates an argument for a reduction in the size of the award due to "limited success" (which I consider in section C(1), below) with an argument that the plaintiffs here are not entitled to any fees award since they do not qualify as "prevailing parties."
 
 
 38
 Plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Texas State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978))).[21] The Supreme Court has stated that a plaintiff is a prevailing party under § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," and that "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior by forcing the defendant to pay an amount of money he otherwise would not pay." Farrar v. Hobby, 506 U.S. 103, 111-12, 113 (1992). Since Schneider and Ramos each received one dollar in nominal damages,[22] they are "prevailing parties" who "crossed the threshold to a fee award of some kind." Garland, 489 U.S. at 792.
 
 C. The size of the fee award
 1. Degree of success
 
 39
 While "the degree of a plaintiff's success in relation to the other goals of the lawsuit" is not relevant to his "eligibility for a fee award," it is "a factor critical to the determination of the size of a reasonable fee." Garland, 489 U.S. at 790. The Colegio contends that the overall fee award should have been reduced because Schneider and Ramos achieved limited success when the litigation is viewed as a whole, and, in particular, plaintiffs failed to achieve the goal "closest to [their] heart[s]," overturning mandatory membership. Evaluating the extent of success for purposes of fees award reduction is assigned to the trial court's discretion and our review is appropriately deferential. See Hensley, 461 U.S. at 437 ("court necessarily has discretion" in making equitable judgment as to fees award reduction for limited success).
 
 
 40
 The Supreme Court has stated that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436). Where a plaintiff recovers "only nominal damages . . . the only reasonable fee is usually no fee at all." Farrar, 506 U.S. at 115. However, this principle applies only "'[w]here recovery of private damages is the purpose of civil rights litigation.'" Id. at 114 (quoting Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., Concurring)). Damages were never a significant issue to the plaintiffs in this litigation.[23] Rather, Schneider and Ramos sought and achieved far more than an award of individual money damages in this case. They sought primarily to vindicate their constitutional rights through injunctive relief. Although compulsory Colegio membership was ultimately held to be constitutional, this holding was subject to a significant qualification: the Colegio would no longer be allowed to use dues and stamp proceeds to support ideological purposes outside of the core purposes of a bar association, and it was forced to institute procedures to refund to Dissenting attorneys dues that were earmarked for such ideological purposes. As the district court put it: "[T]he success of plaintiffs in winning an alteration of the method by which dues were assessed and collected by the Colegio was a victory of major proportions for the constitutional rights of Colegio members. . . . Its significance is not diminished by the fact that there were a good number of issues on which plaintiffs did not prevail." Schneider X, slip op. at 1.
 
 
 41
 The Supreme Court has stated that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440. Claims are related where they "involve a common core of facts or [are] based on related legal theories," or where counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435; see also Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997) (claims unrelated where they "rest on different facts and legal theories" (emphasis added)). Here the district court specifically found that "[t]hose claims in which plaintiffs failed to prevail were reasonably related to the claim on which they succeeded. The [failed] claims were not distinct in all respects" and therefore hours expended pursuing them were properly considered in assessing fees. Schneider IX, 947 F. Supp. at 42 (citing Hensley, 461 U.S. at 440).
 
 
 42
 The Colegio and Secretaries claim the district court abused its discretion in reaching this Conclusion.[24] However, the unsuccessful efforts of Schneider and Ramos to overturn mandatory membership and stamp use were closely related to their successful efforts to establish a dues reduction procedure and limits on the Colegio's use of stamp proceeds. Both remedies pursued by plaintiffs (voluntary membership/stamp use and dues reduction/limits on stamp revenue use) were means to the same end: vindicating the constitutional rights of Dissenters who did not wish to be forced to subsidize the Colegio's ideological activities. Plaintiffs' based their pursuit of both alternate remedies on an identical "core of facts" documenting the Colegio's ideological activities, and on "related legal theories" regarding the underlying constitutional right in question; either identity would be sufficient to establish the relatedness of the remedial claims under the disjunctive standard of Hensley and Coutin, above. Moreover, it would be nearly impossible to "divide the hours expended on a claim-by-claim basis," Hensley, 461 U.S. at 435, even if the district court, in the exercise of its discretion, had determined that it was equitable to do so. I therefore conclude that the district court did not abuse its discretion in declining to reduce the attorney's fees award because Schneider and Ramos did not prevail on every claim they raised or achieve all the relief they requested.
 
 2. The Commonwealth Court proceedings
 
 43
 Under certain conditions, federal courts have held that hours expended in state court proceedings are compensable under § 1988. We have, for example, held that hours expended in state court proceedings are compensable where those state proceedings were initiated and pursued solely because of a federal court's Pullman abstention[25] subsequent to the initial filing of a federal claim in the federal forum. See Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli, 788 F.2d 47 (1st Cir. 1986) (where § 1983 action halted under Pullman for certification of issue of Rhode Island law to state supreme court, and state court's resolution mooted § 1983 claim, attorney's fees properly awarded for hours spent on state court proceedings); see also Bartholomew v. Watson, 665 F.2d 910 (9th Cir. 1982) (state court action compensable where state proceedings initiated and pursued solely because of filing of federal claim and subsequent Pullman abstention by federal court). Clearly, therefore, all hours expended on proceedings before the Supreme Court of Puerto Rico subsequent to our 1984 abstention ruling and leading to its June 1986 opinion, and any subsequent Supreme Court of Puerto Rico proceedings, are eligible for compensation. Section 1983 was part of the litigation by then, and federal court abstention made the prosecution of the Commonwealth proceedings necessary to the advancement of the federal proceeding.
 
 
 44
 The Colegio argues that hours spent in the disciplinary proceeding in the Supreme Court of Puerto Rico from 1977 to plaintiff's 1982 disbarrment, prior to the filing of the federal claim, should not be compensable under § 1988 since the disciplinary proceeding preceded the filing of the federal claim but was not a legally necessary precursor[26] to the filing of that claim. On this line of argument, Schneider and Ramos should have raised their federal constitutional defenses to the disbarrment proceedings immediately (instead of reserving them) and should then have attempted to remove the case to federal court. Better yet, according to the logic of the Colegio, they might have preempted the disbarrment action by filing a complaint seeking declaratory relief in federal court under § 1983, instead of simply letting their dues payments lapse and waiting for the Colegio to commence disciplinary proceedings in the Commonwealth Court. However, they chose to allow the disciplinary proceedings to commence and then intentionally reserved their federal (§ 1983) defenses. The Colegio claims that this course of conduct left the 1977-1982 disciplinary proceedings essentially unrelated to the § 1983 action that eventually followed, and thus any hours expended on the disciplinary proceedings should not be compensable under § 1988.
 
 
 45
 In ordering more proceedings on the subject of attorney's fees in its October 1996 ruling, the district court stated that "[a]bsent a showing that these hours[ claimed for work in Commonwealth Court proceedings], or any part of them, were either done for the benefit of this federal litigation or necessary to maintain or advance this litigation, or otherwise connected to or required by this litigation, such work is not covered by 42 U.S.C. § 1988." Schneider IX, 947 F. Supp. at 42 (citing Webb v. County Bd. of Educ., 471 U.S. 234 (1985)). Ultimately, however, the court justified its actual fees award not on Webb but rather on its Conclusion that the Commonwealth Court proceedings of 1977-1982 would have been part of any federal § 1983 action because of the inevitability of Pullman abstention on the facts of this case. Specifically, the district court stated that "[c]lose scrutiny has been given to plaintiffs' claim for attorney[']s fees incurred in the Commonwealth court proceedings from November 1977 . . . to June 9, 1982 [the date of filing the federal action]." Schneider X, slip op. at 3. Noting that this litigation did not have the "'neat' history of an action in which the federal court immediately abstained in order to allow a state action to proceed," the court nevertheless concluded that "the conduct and Conclusion of the Commonwealth proceeding was eventually recognized as a necessary prerequisite and adjunct to the federal action." Id. at 4.
 
 
 46
 I cannot agree with this rationale, grounded as it is on the inevitability of the 1977-1982 Commonwealth proceedings even if Schneider and Ramos had filed their federal claims in federal court prior to the commencement of the disciplinary proceedings in 1977. Pullman abstention is a discretionary practice of federal courts, premised on both prudential and federalism/comity concerns, see Pullman, 312 U.S. at 500-01, and it is therefore impossible to say with certainty that a federal court would have ordered abstention on a given set of facts. See Baggett v. Bullitt, 377 U.S. 360, 375 (1964) ("The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers."); Erwin Chemerinsky, Federal Jurisdiction 742 (3d ed. 1999) ("abstention doctrines are derived from the discretion inherent to courts of equity" (citing Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 722-26 (1996)); id. at 747-48 (acknowledging contradictory precedent but stating "[t]he preferable approach is to treat abstention as discretionary").
 
 
 47
 It is true that we have awarded fees for hours spent defending state court proceedings that were not the product of a federal court's abstention. In Stathos v. Bowden, 728 F.2d 15 (1st Cir. 1984), an employer, anticipating a § 1983 suit by two employees, brought an action seeking a declaratory judgment under Massachusetts' sex discrimination statute in state court prior to the filing of a federal claim by the employees. The employees promptly brought a federal § 1983 claim in federal court, and then immediately sought to dismiss the preemptive state action brought by the employer by citing the pending federal case. The state action was then stayed pending resolution of the federal case. See Municipal Lighting Commission of Peabody v. Stathos, 433 N.E.2d 95, 96 (Mass. App. Ct. 1982) (detailing chronology). We held that the hours spent by the employees in defending the state declaratory judgment action were a "necessary part of [the employees'] efforts to achieve their § 1983 goal" (and thus compensable under § 1988) since the "issues in the state suit were virtually the same as in the federal case" and the employees "were forced to defend [the state case] lest they lose their § 1983 claim in the federal courts through collateral estoppel." 728 F.2d at 22.
 
 
 48
 While the Colegio's attempt to disbar Schneider and Ramos might seem analogous to the preemptive action taken by the employer in Stathos, the situations are distinguishable. Schneider and Ramos did not move to cut short the state proceedings by instituting a separate § 1983 action in district court and then moving to halt the Puerto Rico Supreme Court proceedings pending action in the federal court (as did the employee-plaintiffs in Stathos), nor did they raise federal defenses in the Commonwealth proceedings and seek removal to the district court. Here, unlike the employees in Stathos, Schneider and Ramos were not at risk of losing their claims through collateral estoppel or res judicata (issue or claim preclusion, respectively) predicated on the Puerto Rico Supreme Court's resolution of the issues before it. See Schneider I, 546 F. Supp. at 1268-74 (pre-1982 state proceedings not res judicata as to federal proceedings; collateral estoppel also not applicable); Schneider VI, 670 F. Supp. at 1104 (same). Rather, they attempted to prevail on Commonwealth law grounds in the Puerto Rico Supreme Court while reservingall federal/§ 1983 claims. They therefore have no claim to hours expended on the disciplinary proceedings under Stathos.
 
 
 49
 The Supreme Court has stated in Webb v. Board of Education of Dyer County, Tennessee, 471 U.S. 234, 243 (1985), that even hours spent pursuing procedurally-optional proceedings prior to the commencement of the federal litigation may be compensable where the work done in those optional proceedings was "both useful and of a type ordinarily necessary to advance" a later federal claim. There the Supreme Court held that because exhaustion of administrative remedies was not a prerequisite to a § 1983 claim,[27] plaintiff Webb was not entitled to attorney's fees for "all" work done in (optional) administrative proceedings he chose to pursue before his federal § 1983 action was filed.[28] The court held the prevailing plaintiff to his contention (which he argued consistently in the courts below) that "all of the hours spent by his attorney" in the optional administrative proceeding were "reasonably expended" to enforce rights under § 1983. Id. at 242 (emphasis added). "The question argued below was whether the time spent on the administrative work during the years before [the filing of the § 1983 claim in] August 1979 should be included in its entirety or excluded in its entirety. On this record, the District Court correctly held that all of the administrative work was not compensable." Id. at 243 (emphasis added). "The petitioner made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance" the § 1983 claim. Id. (emphasis added). Whether or not facts like those in Webb might ordinarily support a partial fee award,[29] the "all-or-nothing" nature of the plaintiff's fee claims in Webb precluded such a result.[30]
 
 
 50
 In the case before us, we have no indication that Schneider and Ramos made claims in any way distinguishable from those made by Webb. Webb's attorney's fees claims in the district court contained an "itemized description of the time spent" in the ancillary administrative proceedings. Id. at 238. Schneider's and Ramos' application did the same, detailing specific tasks and hours spent thereon in the disciplinary proceedings. However, in Webb this approach was found to be insufficient, given that Webb presented only evidence "that the administrative work in its entirety was 'useful' and 'necessary' to the outcome of the litigation." Id. at 257 (Brennan, J., Dissenting in part and Concurring in part) (emphasis added). Schneider and Ramos argued below that the "total" hours expended in the 1977-1982 disciplinary proceedings were compensable, on the theory that "litigation in the Puerto Rico Supreme Court of the 1977 case Colegio v. Schneider et al[.,] was a necessary and indispensable condition precedent to and part of this case." Motion for Attorneys Fees, Dkt. 257 (Sep. 28, 1988), at 6. Later, after the Schneider IX decision, they argued that a "prior ruling by the highest State [sic] Court on the Constitutionality of said laws under the Constitution of the Commonwealth of Puerto Rico was a prerequisite to the federal claim, irrespective of whether said ruling was prior to or after the institution of the suit in the Federal [sic] Court [sic] challenging the constitutionality of said laws under the U.S. Constitution." Motion in Compliance with October 30, 1996 Order, Dkt. 382 (Feb. 7, 1997), at 3. Both statements present all-or-nothing claims similar to those rejected in Webb. The statements also mirror the inevitability theory put forward by the district court, a theory I have rejected, above. In fact, Schneider and Ramos did not articulate below (or on appeal) any viable theory for why some "discrete portion" of the hours spent in the disciplinary proceedings should be compensable as "useful and . . . ordinarily necessary" under Webb.
 
 
 51
 I therefore concur in the Conclusion that we must reject the claim of Schneider and Ramos for attorney's fees for hours spent prior to June 3, 1982 on Commonwealth Court proceedings, and must adjust the district court's award, eliminating those amounts owing to hours expended prior to June 3, 1982 on Commonwealth Court proceedings. In total these hours accounted for $13,872.20 of the district court's fees award,[31] and this deduction results in a reduced award of $230,975.92, plus costs[32]and with interest from September 22, 1988 as per the district court's order.
 
 
 52
 3. Miscellaneous claims for adjusting the fee award
 
 
 53
 The Colegio contends that the court should have adjusted the fee award downwards for work on losing claims advanced by plaintiffs. I have already considered and rejected these "partial success" fee reduction arguments in my Discussion of the degree of success issue, above. The Colegio also objects to the court's failure to reduce the fee award for hours spent on motions by plaintiffs that were dismissed, for allegedly excessive hours claimed for individual tasks, and for clerical tasks allegedly inappropriately performed by lawyers. The district court gave these claims careful consideration in rejecting the majority of them,[33] see Schneider X, slip op. at 5-6, and we have properly refrained from disturbing its exercise of discretion here.
 
 
 54
 Citing no authority, see Appellant's Br. at 34-37, the Colegio and Secretaries challenge the district court's refusal to discount the fees award for time spent by plaintiffs pursuing unsuccessful or partially successful appeals to this court. The Schneider II proceeding, for instance, resulted in the grant of a writ of mandamus to the defendant/petitioner Justices, reducing them to nominal parties; our decision in the Schneider V appeal vacated the district court's decision in favor of plaintiffs and ordered abstention; and our Schneider VIII decision temporarily stayed an injunction granting relief sought by plaintiffs. However, "the prevalent approach" to determining whether a plaintiff is a prevailing party "on appeal[] is to inquire whether the plaintiff has prevailed in the litigation as a whole." John E. Kirklin, Section 1983 Litigation: Statutory Attorney's Fees 29 (3d. ed. 1997); see also Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991) ("a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage"); Buffington v. Baltimore County, 913 F.2d 113, 128 n.12 (4th Cir. 1990) (district court need not revisit fees award for first trial, which ended in mistrial, where plaintiff prevailed in subsequent trial); Alizadeh v. Safeway Stores, Inc., 910 F.2d 234, 237-38 (5th Cir. 1990) (fees awarded for work on appeal which resulted in reversal of summary judgment in favor of Safeway, which then prevailed at trial; ultimate success on merits made award of "fees for the entire course of the litigation" reasonable exercise of district court's discretion); Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir. 1988) (plaintiff had prima facie entitlement to "entire fees in this court" on appeal (from fees award) where fee award was affirmed but reduced by a third); Dougherty v. Barry, 820 F. Supp. 20, 25 (D.D.C. 1993) (rejecting attempt to bifurcate failure on appeal from success at trial; reasonable fees would be "determined by examination of the entire case").
 
 
 55
 Here, Schneider and Ramos ultimately succeeded in achieving a significant portion of the relief sought, despite a number of backwards steps along the convoluted pathway this litigation took through the courts (including this court of appeals). I have no difficulty concluding that the district court was within its discretion in refusing to discount hours spent in unsuccessfully defending appeals, especially where the appellate setbacks suffered by plaintiffs were largely procedural in nature (here, reducing the Justices from defendants to nominal defendants, postponing (temporarily, as it turned out) the exercise of federal jurisdiction, and temporarily postponing the effectiveness of an injunction). Cf. Jaffee v. Redmond, 142 F.3d 409, 414 (7th Cir. 1998) (an "unsuccessful but reasonable argument in support of a successful claim may be compensable."). The result might be different were the unsuccessful appeals initiated by the plaintiffs, but that was not the case for the three appeals to this court mentioned above. See Ustrak, 851 F.2d at 990 (for purposes of determining whether unsuccessful appeal is sufficiently related to plaintiff's success, "a distinction should be made between an appellant and an appellee"; where "defendant appeals and plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success," plaintiff/appellee should be awarded fees since "he had no choice but to incur them or forfeit his victory in the district court.").[34]
 
 D. Refund of dues
 1. Background
 
 56
 The district court's final judgment in this matter, Schneider XI at 1-2, included an order resolving Dissenters' claims to a refund of dues amounts corresponding to ideological activities of the Colegio during years prior to the institution of the final dues reduction procedure outlined in the 1993 rules promulgated by the Supreme Court of Puerto Rico. Before responding to the parties' objections to the district court's dues refund order, I must review the history of that court's orders concerning dues payments during the pendency of this case, including the dues payments that were actually made by plaintiffs (relying primarily on the briefs on appeal and cross-appeal for much of the payment data, which is absent from the record).
 
 
 57
 Schneider ceased to pay dues in 1974, Ramos in 1976. See Schneider I, 546 F. Supp. at 1255. Our 1984 abstention decision stated that a pure refund remedy was inadequate (a similar plan having been rejected by the Supreme Court in Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, 466 U.S. 435, 441-44, 104 S. Ct. 1883, 1889-90 (1984), on the grounds that the amount to be rebated constitutes an "involuntary loan" to the union), and that the Supreme Court of Puerto Rico should adopt an interim rule allowing for a portion of Dissenters' dues payments to be held in escrow. See Schneider V, 742 F.2d at 44. We suggested that a reasonable interim remedy would allow Dissenters to pay 50% of dues into escrow. See id. at 44-45. This recommended interim remedy was approved on November 13, 1984 by the Supreme Court of Puerto Rico, which allowed readmission of Dissenters upon compliance; with respect to Schneider and Ramos, the Court allowed them to pay 50% of their dues into escrow for all dues years for which they had voiced objection to Colegio ideological activities. See Dkt. 328, Exh. A (Nov. 13, 1984 order of the Supreme Court of Puerto Rico).
 
 
 58
 The parties stipulated terms for the escrow account, including requirements that the name of the bank holding the account and the account number be disclosed to Dissenters, and that the Supreme Court of Puerto Rico would order the Colegio "not to withdraw any amount of money from this [Escrow] Account until the claims in dispute have been finally resolved by the Supreme Court of Puerto Rico, and, if it were necessary, by the federal courts." Bl. Br. (cross appeal) at 7-8 (quoting Dkt. 328, Exh. B, at 2). The stipulation was signed by the parties on Jan. 23, 1985, and on Jan. 31, 1985, Schneider and Ramos paid the Colegio 50% of their dues corresponding to years 1978-1985 inclusive, and an equal amount into the escrow account. At the same time, Schneider paid his full dues for years 1974-1977 directly to the Colegio as well, see Red Br. (cross appeal) at 21, and Ramos similarly paid full dues for 1976-1977 directly to the Colegio, see Red Br. (cross appeal) at 22; neither plaintiff paid any amount into escrow for those dues years. In 1986 Schneider and Ramos paid appropriate amounts to the Colegio and the escrow account for their 1986 dues. See Red Br. (cross appeal) at 22. The Supreme Court of Puerto Rico's 1986 remedy provided that 15% of dues could be paid to escrow for dues years from 1987 onwards. See Colegio II, 17 T.P.R. at 634. Nothing in the briefs or record on appeal indicates whether or not Schneider or Ramos paid any dues for 1987 or 1988.
 
 
 59
 In 1988 the district court enjoined the Colegio from mandating bar membership or dues payments, see Schneider VII, 682 F. Supp. at 691; after a grace period, this injunction appears to have gone into effect on May 31, 1988 (although the record is far from clear; the injunction may have been stayed pending appeal). We suspended effectiveness of the injunction for 6 months in 1990, but allowed 100% of dues to be escrowed during this stay. See Schneider VIII, 917 F.2d at 636. After the 6 months expired, petitions for certiorari were filed by all parties, and the district court extended our stay pending resolution of these certiorari petitions. The Supreme Court denied certiorari in January 1992. See 502 U.S. 1029 (1992). In June 1992, the Supreme Court of Puerto Rico issued new rules governing dues that allowed Dissenters to pay a proportionately lower dues amount based on the Colegio's budget for unobjectionable activities. Schneider admits not making dues payments for the dues year 1989 and every year afterwards. See Red Br. at 12. As for Ramos, the Colegio indicates that he paid dues from 1989 to 1992 and paid the full, undiscounted amount to the Colegio for 1993, see Red Br. (cross appeal) at 21; there is no indication of whether Ramos paid some or all of his dues for 1989-1992 into the escrow account.
 
 
 60
 The 1992 rules promulgated by the Supreme Court of Puerto Rico established a Review Board to deal with disputes over categorization of expenses. On May 24, 1995, the Colegio appeared before the Board to present its dues refund proposal for dues years 1985-1992. On August 29, 1995, the Review Board issued a decision determining amounts for refund to plaintiffs in conformity with the Colegio's proposal. For dues years 1989-1992, the amount to be refunded was determined on the basis of an independent accounting for that portion of the Colegio budget spent on ideological activities[35] ; for other years where no accounting was done, the total portion of dues (50% for 1985-1986 and 15% for 1987-1988) paid into escrow was ordered refunded; in each case, refunds were to include interest. Notwithstanding the Review Board's pronouncement, further proceedings in the district court took place in order to resolve the refund issue. After reviewing the contentions of both parties, the court determined that "the fairest way to resolve" the refund issue was to avoid determining exactly what percentage of the Colegio budget for past years was attributable to ideological activities, Schneider IX, 947 F. Supp. at 42, and ultimately ordered that all moneys that had been paid into escrow but were as yet unrefunded should be returned to plaintiffs, with interest. See Schneider XI at 1-2.
 
 
 61
 2. The Colegio's objection to the dues refund order
 
 
 62
 The Colegio argues that the district court's "Memorandum, Opinion and Order" of Oct. 30, 1996, Schneider IX, 947 F. Supp. at 42, "augments" the amount of dues to be refunded to plaintiffs, over and above the limited refunds of escrowed dues approved by the Review Board in 1995. The district court's final judgment ordered the refund of all dues deposited in escrow, whereas the Review Board approved only a partial refund for the years 1989-1992, following the results of its independent accounting. For example, for years 1990-1992, Dissenters were allowed to pay 100% of their dues into escrow, all of which would be refundable to Dissenters under the district court's refund plan, whereas the Review Board determined that only a small portion of those payments would be refunded based on its accounting of ideological-activity related expenses for those years. However, in developing its argument, the Colegio does not claim that this "augmentation" of the refund is substantively unfair (with one minor exception addressed below), but only claims that the Review Board's determination of the issue should have had a preclusive effect on the district court. I find nothing about the Review Board proceedings and refund order that indicates its Conclusions should be binding on the parties to the federal case.[36] The refund issue had been a part of the federal case for many years, see, e.g., Schneider VII, 682 F. Supp. at 675, it remained so, and the district court was well within its power in choosing to resolve it as it did.
 
 
 63
 The Colegio also seems to imply that the 1996 Opinion unfairly "augments" the dues refund by ordering the Colegio to pay Schneider a refund (in the amount of 50% of compulsory dues) for years in which Schneider did not in fact pay any dues. The October 1996 order states: "To the extent that, in any year of the ... period [during which dues were partially escrowed], the refund by the Colegio to plaintiffs was less than 50% of the compulsory dues, the difference shall be paid to plaintiffs with interest from the end of that membership year." Schneider IX, 947 F. Supp. at 42.[37] This language might be read to mean that, had no dues been paid into escrow by a plaintiff, and thus no dues refunded, the Colegio would nonetheless owe said plaintiff the difference between the amount refunded (zero) and half the compulsory dues, resulting in a windfall for the plaintiff. However, the court's final order of March 23, 1998 states its mandate somewhat differently:
 
 
 64
 3. That, for the years in which plaintiffs and other lawyers, following the commencement of this action up to the promulgation of the rules referred to above, paid 50% or another portion of their annual compulsory dues into an escrow account and said amounts have not been refunded, then the Colegio shall refund the unrefunded amounts together with interest on those amounts from the end of the membership year for which they were deposited."
 
 
 65
 Schneider XI at 1-2 (D. Puerto Rico March 23, 1998). This provision clearly covers only "paid" and "unrefunded" amounts, which by definition could not include amounts never paid by plaintiffs or amounts already refunded under the plan approved by the Colegio's Board of Review, if any. To the extent that any language in the earlier opinion of the court could be interpreted to the contrary, it is superseded by the text of this final order.[38]
 
 III.
 The Cross-Appeal
 A. The adequacy of the dues refund
 
 66
 On cross-appeal Schneider and Ramos assert that the dues refund order did not go far enough, and should have included an order for dues refunds for the ten years prior to the court's opinion and findings of fact in Schneider v. Colegio, 565 F. Supp. 963 (D.P.R. 1983). The district court's findings of fact are detailed in the appendix to its opinion entitled "Supplementary Findings and Conclusions":
 
 
 67
 30. The official positions, activities and actions of the Colegio over the past ten years evidence a pattern of conduct by the Colegio to engage in, and to use the facilities, personnel and resources of the Colegio for ideological or political activity without restriction or limitation in the name and representation of all the members of the Colegio, including Plaintiffs."
 
 
 68
 Schneider III, 565 F. Supp. at 982-83 (emphasis added). That opinion was vacated on appeal, but the district court later regarded its earlier factual findings as either the law of the case (since not appealed from) or incorporated into the later opinion. See, e.g., Schneider VII, 682 F. Supp. at 678-79. Schneider and Ramos claim the court's 1998 order should have mandated further refunds to cover the Colegio's use of dues for ideological activities during the ten year period described in the court's 1983 finding. This period includes years for which no portion of dues was paid into the escrow account; such amounts would not be covered by the court's 1998 refund order.
 
 
 69
 Schneider and Ramos did not properly preserve this issue for appeal. The district court first addressed the refund issue in its October 30, 1996 order, stating that plaintiffs claimed "the Colegio has not refunded to them the amount of dues properly attributable to non-core activities during the course of this litigation." Schneider IX, 947 F. Supp. at 42. The court subsequently requested that the parties submit proposed final orders. Plaintiffs' proposed order provided only for refunds of dues paid into the escrow account "during the period from June 9, 1982 up to February 23, 1993." Dkt. 389, Dec. 5, 1997, Exhibit A, at 12. Schneider and Ramos thereby waived the issue of refunds of dues paid during any earlier period,[39] and we have correctly refused to entertain their request to exhume it on appeal. See Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993) (appellate courts will not ordinarily resolve issues waived or abandoned at trial).
 
 
 70
 B. Construction of the Supreme Court of Puerto Rico's rules governing the right to object to unbudgeted activities of the Colegio
 
 
 71
 The district court issued an order, Dkt. 313, Nov. 19, 1992, which mandated that the parties petition the Supreme Court of Puerto Rico to consider certain amendments to that Court's 1992 rules governing membership in the Colegio and the Colegio's use of dues for ideological activities. The controversy at hand concerns language in Rule 6(A), reproduced in context below ("second-category activities" are those activities not related to the core purposes of a bar association, or having "ideological overtones"):
 
 Rule 5 Dues
 
 72
 (A) Bar members who choose to finance all Bar Association activities shall pay the annual dues fixed by the General Assembly in accordance with the law.
 
 
 73
 (B) Computation of annual dues for bar members who choose not to finance second-category activities shall be based on the classification of the activities included in the Rule 4(B)(2) statement of income and expenses. The annual dues shall be an amount equal to the proportion of the regular dues that expenditures for first-category activities bear to expenditures for all Bar Association activities carried out during the year.
 
 
 74
 (C) Second-category activities shall not be funded from loans or contributions to the Bar Association, unless otherwise specified by the person who makes the contribution at the moment such contribution is made and it is thus accepted by the Bar Association upon receipt of the same.
 
 Rule 6 Remedial mechanisms
 
 75
 (A) Any bar member who pays his Rule 5(B) bar dues is entitled to resort to the Review Board of the Bar Association Activities (Review Board) created by these rules, with regard to:
 
 
 76
 (1) the classification of any particular activity included in the audited statement of income and expenses used as basis for the computation of dues, and/or
 
 
 77
 (2) the real expenses of a given activity.
 
 
 78
 (3) any nonbudgeted activity funded by first-category activity dues that arises during the course of the year, with respect to classification or amount of expense.
 
 
 79
 Rules relating to the use of the Puerto Rico Bar Association funds collected from the payment of dues and from the sale of notarial and bar stamps, as amended, January 1993 (certified translation, Dkt. 376) (emphasis added) (quoted in Schneider IX, 947 F. Supp. at 39). The 1992 version of Rule 6(A), extant prior to the district court's order, was identical except for ¶¶(3), which was added as per the district court's Nov. 18, 1992 order. However, the district court also recommended in its order that the highlighted language in the first line of Rule 6(A), above, be changed. The relevant text of the district court's order follows:
 
 
 80
 "Plaintiffs object to the remedial mechanisms of Rule 6. As the Rule now stands, members must elect not to finance budgeted, noncore activities at the beginning of the year. Only those members who elected not to finance noncore activities may seek review of the budget by the Review Board of the Bar Association Activities ("Review Board"). This rule provides no avenue to object to nonbudgeted, noncore items that arise throughout the year, which if past experience is any indication, comprise the bulk of the noncore activities."
 
 
 81
 "Thus Rule 6 must be amended to allow all members (whether they objected to the projected budget, or approved it initially, and later Dissent from a nonbudgeted, noncore activity that was funded from the core activity budget) to Dissent at any time during the year, and to receive a refund should the Review Board grant their petition. The court notes that at the hearing counsel for the Colegio maintained that the Rules currently contain such a provision, and conceded that such a provision should be added if the Rules did not."
 
 
 82
 The following amendments should be made to Rule 6:
 
 
 83
 "a) delete "his Rule 5(B) bar" from lines 1-2 of Rule 6;"
 
 
 84
 "b) add "(3) any nonbudgeted activity funded by first-category activity dues that arises during the course of the year, with respect to classification or amount of expense." after provision (2) of Rule 6;"
 
 
 85
 Order, Dkt. 313 at 2 (Torruella, J.) (emphasis added to 6(A)). The mandate at the end of the district court's order states that "[t]he parties are hereby ordered to petition the Supreme Court of Puerto Rico to consider the amendments to the Rules indicated herein." Id. at 5. Notwithstanding the district court's use of the term "consider," in fact the Supreme Court of Puerto Rico adopted all the changes except the amendment to lines 1-2 suggesting the deletion of "his Rule 5(b) bar" from Rule 6.
 
 
 86
 Schneider and Ramos allege that the motion the Colegio filed with the Supreme Court of Puerto Rico did not include language describing the district court's proposed amendment to lines 1-2 of Rule 6. They claim such presentation to the Commonwealth Court was mandatory (and imply that the failure to present was hidden from the district court by the Colegio's failure to translate its motion into English). In response, the Colegio claims the amendment was a mere "suggestion" by the court, but further claims to have presented the entire November 18, 1992 order (in English and in Spanish translation) to the Supreme Court of Puerto Rico.[40] This dispute was raised before the district court after Judge Watson replaced Judge Torruella in 1995. The district court's opinion of Oct. 30, 1996 states:
 
 
 87
 In their motion for entry of judgment and injunctive relief, plaintiffs have argued that the Rule reproduced above limits the right to review to those who elected not to finance non-core activities at the beginning of the year, i.e., when the budget was first announced or approved. Plaintiffs claim that Rule 6 of the Rules still does not provide a way to object to non-budgeted, non-core items that arise during the year for the first time.
 
 
 88
 This claim is totally incorrect. At a time when this Judge had first entered the case, and when a complete copy of the new rule was not in the record, the adamancy with which this claim was advanced caused this court to hold hearings and order that a certified translation of the new Rule be filed. But when all is said and done plaintiffs have been unable to point to any meaningful way in which the new Rule fails to conform to the constitutional standards laid out by this court and the court of appeals."
 
 
 89
 Schneider IX, 947 F. Supp. at 41 (Watson, J.) (emphasis added). I concur with this judgment.
 
 
 90
 On a literal reading, the 1993 Rules as amended might appear to prevent those who "choose to finance all bar activities" (and thus pay Rule 5(A) dues) from changing their minds mid-year and invoking the review procedures of Rule 6(A) (limited to those who pay "Rule 5(B) dues") when an unforeseen activity belonging in the "second-category" is funded from the core activity budget. On this reading, advocated by Schneider and Ramos, the amended Rules establish an "all or nothing" objection rule, as it were: only those who choose not to fund any second category activities (by paying the reduced Rule 5(B) dues) may object mid-year under Rule 6 to the categorization or accounting for costs of budgeted or unbudgeted activities.
 
 
 91
 However, as the Colegio argues, other parts of the Rules counter such an interpretation. Specifically, language in Rule 6(C) allows for objections to unbudgeted activities by those who initially opted to fund all activities:
 
 
 92
 [Rule 6](C) Should the Review Board determine, after adjudicating the petitions filed for the year in question, that the expenses for second-category activities exceeded the budget, it shall order the Bar Association to make refunds to the bar members who chose not to finance such activities, or later objected to nonbudgeted, second-category activities, and to pay interest at the legal rate prevailing at the time when the dues were paid. The Review Board shall remit all funds to Dissenters within a reasonable time. The Review Board shall order any fund surplus remitted to the Bar Association.
 
 
 93
 Rule 6(C) (1993 version) (quoted in Schneider IX, 947 F. Supp. at 39-40) (emphasis added). The highlighted language was recommended by the district court's Nov. 18, 1992 order, and presumably was designed to be consistent with the other amendments recommended by that order. It clearly presumes that the right to object is granted even to those members who declined the option of not paying dues for second-category activities at the beginning of the year.
 
 
 94
 As more support for the Colegio's reading, I note that language suggested by the district court and now incorporated into Rule 9(B) seems to distinguish 6(A) petitions from "nonbudgeted activity" petitions:
 
 
 95
 [Rule 9](B) A Rule 6(A) petition objecting to budgeted items shall be filed before the final date set for payment of the annual dues. All petitions objecting to non-budgeted items shall be filed within ten (10) working days after the event or item occurs.
 
 
 96
 Rule 9(B) (1993 version) (quoted in Schneider IX, 947 F. Supp. at 40) (emphasis added) (highlighted sections added in response to the Nov. 18, 1992 order's proposed amendments). Again, this language clearly allows any dues payer to object to nonbudgeted activities (notwithstanding the "Rule 5(B) dues" restriction of Rule 6(A)). The Colegio insists that the Rules must be read this way,[41] the district court agreed, and I concur: notwithstanding the limiting language in Rule 6(A), any member of the Colegio who pays dues (whether they be Rule 5(A) dues or Rule 5(B) dues) may resort to the Review Board in order to object to "any nonbudgeted activity funded by first-category activity dues that arises during the course of the year, with respect to classification or amount of expense" (as per Rule 6(A)(3)) and, if successful, receive an appropriate refund.
 
 
 97
 Schneider and Ramos claim that the district court should have been bound in its 1996 ruling by the order of the court in 1992, which they claim established the "law of the case," and should have insisted that the new rule "comply strictly" with the 1992 order's recommended changes to Rule 6(A). It is true that the effect of the district court's reading in 1996, and mine, is not exactly the same as the effect of the 1992 order's recommended amendment to line 1 of Rule 6(A): had the amendment to Rule 6(A) been made, and the language "his Rule 5(B) bar" been deleted, a Rule 5(A) dues payer would have been able to voice objection under 6(A)(1) or (2) to classification or real expenses of budgeted items. On the district court's reading in 1996, 5(A) dues payers may not so object to treatment of budgeted items, but only to treatment of "any nonbudgeted activity funded by first-category activity dues that arises during the course of the year," as per Rule 6(A)(3). However, objections to budgeted activities by Rule 5(A) dues payers were not contemplated by the reasoning of the district court's 1992 order, which was concerned with only the right of any member "to object to nonbudgeted, noncore items that arise [during the course of] the year." Order, Nov. 19, 1992, Dkt. 313, at 2. Since the reading of the district court in 1996 gives the Rules the effect intended by the court's 1992 order, there is no law of the case problem.
 
 
 98
 C. Sanctions for the Colegio's failure to notify the plaintiffs of its June 20, 1991 motion to stay judgment
 
 
 99
 Our opinion of December 20, 1990 (Schneider VIII, 917 F.2d at 636) stayed for six months the effectiveness of the district court's 1988 judgment (Schneider VII) immediately enjoining the Colegio from compelling membership until it either ceased all ideological activities or implemented an adequate system to protect Dissenters' rights. We took that action to give the Colegio time to submit to the district court a modified rule governing use of compulsory dues, in the hope that such a delay would permit the preservation of the integrated bar while allowing the Colegio to formulate a remedy for the constitutional problems highlighted by this litigation. During the stay, all parties submitted petitions for certiorari to the Supreme Court of the United States.[42] On June 20, 1991, the date on which our stay was to expire, the Colegio requested an extension of the stay pending the Supreme Court's consideration. The Colegio did not notify Schneider of its motion requesting the stay.[43] On July 19, 1991, the district court granted the stay of the injunction as requested, and, according to the Colegio, notified all parties. Schneider claims the Clerk's office failed to notify him. The Supreme Court denied certiorari on January 13, 1992. On June 30, 1992, the Supreme Court of Puerto Rico promulgated rules governing use of Colegio funds, effective July 1, 1992. On August 13, 1992, Schneider and Ramos moved for sanctions against the Colegio for failing to notify them of its motion. The court denied their request.
 
 
 100
 Schneider and Ramos claim that as a result of the Colegio's failure to give notice, "[p]laintiffs had every reason to assume that the injunction regarding the Colegio compulsory dues was in effect and that they were under no obligation to pay Colegio compulsory dues and plaintiffs relied on this assumption." Schneider and Ramos imply that they mistakenly failed to pay their next installment of Colegio dues and were subject to renewed disciplinary proceedings. According to their brief (we have nothing in the record to confirm this), on September 8, 1992, the Colegio commenced a disciplinary action against Schneider and others as a result of their failure to continue paying dues upon the extension of the stay; the case, AB92-90, remains dormant but pending in the Supreme Court of Puerto Rico.
 
 
 101
 In denying the motion for sanctions (in its order reviewing the new rules), the district court added an important qualifier to its order, which essentially responds to the claim of Schneider and Ramos:
 
 
 102
 Plaintiffs' motion for sanctions against the Colegio de Abogados, for failure to notify plaintiffs that the court stayed the reimposition of the injunction against the Colegio, is denied. The plaintiffs are not relieved from payment of their annual membership dues and must do so within fifteen (15) days from the filing of this Order if they wish to retain membership in the Colegio. Upon payment of the dues owed by plaintiffs, the Colegio is ordered to rescind any request for disbarrment that may have been filed as a result of plaintiffs' failure to timely pay their dues.
 
 
 103
 Order of Nov. 18, 1992 (Dkt. 313), at 1-2 (emphasis added). Federal Rule of Civil Procedure 5 requires that all parties not in default be served with essentially all papers and pleadings filed subsequent to the original complaint. The rule itself does not specify what sanctions are appropriate for violations. Where the moving party has failed to serve a motion on the nonmoving party, courts have struck or denied the motion or set aside the relief requested in the motion if already granted. See 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1143 n.13 (citing cases). Although the court stated that it was denying plaintiffs' motion for sanctions, it established a grace period for payment of any dues that plaintiffs mistakenly failed to pay as a result of their lack of notice, and thereby mitigated any prejudice to plaintiffs resulting from the failure to give notice. Schneider and Ramos do not indicate exactly what further sanction they requested below, if any, and any specific argument for further sanctions is thus waived.[44]
 
 
 104
 D. The Colegio's withdrawal of funds from the escrow account in 1986
 
 
 105
 The Supreme Court of Puerto Rico, by resolution of November 13, 1984, as modified by stipulation of the parties on January 23, 1985,[45] adopted an interim remedy in consonance with the proposals of this court in Schneider V, 742 F.2d 32, 44-45 (1st Cir. 1984). Under this interim remedy, disbarred plaintiffs could request readmittance if they paid half their dues to the Colegio and half into an interest-bearing escrow account, where the funds would be held until the parties and the courts worked out a final refund procedure. Plaintiffs were allowed to escrow half their dues payable back to the first membership year for which they objected to the Colegio's ideological activities. As of December 1986, Schneider had deposited 50% of his dues for membership years 1978 through 1986 in the escrow account; the other plaintiffs similarly had paid half of their dues for certain years into the escrow account. The parties stipulated that the Colegio would inform the Dissenting attorneysdepositing their dues into the escrow account of the account number and the name of the bank selected by the Colegio to hold such account. The stipulation also provided that the Colegio would not withdraw funds from the account "until the claims in dispute have been finally resolved by the Supreme Court of Puerto Rico." Dkt. 328, Exh. B, at 2.
 
 
 106
 On June 26, 1986, the Supreme Court of Puerto Rico adopted a remedy providing for the deposit in an escrow account of 15% of compulsory dues paid by any lawyer Dissenting to ideological activities of the Colegio. See Colegio II, 17 T.P.R. at 634.[46] On December 24, 1986, the Colegio withdrew 70% of the balance deposited in the escrow account and (according to plaintiffs) the total of the interest, leaving 30% of the deposit balances remaining in the escrow account. Since the amount originally deposited in escrow was 50% of total dues, the 30% of deposit balances remaining in escrow after the withdrawal corresponded to 15% of total dues.[47] Apparently the Colegio presumed that it was entitled by the terms of the 1986 remedy to reduce the Dissenters' dues withholding for prior years from the 50% of total dues the Supreme Court of Puerto Rico mandated in 1984 to the 15% of total dues mandated by its 1986 decision. However, plaintiffs also claim the Colegio withdrew all of the interest earned in the account, not just 70% of it. They also argue that nothing in the Supreme Court of Puerto Rico's opinion stated its 15%-withholding-based remedy would be applied retroactively. Plaintiffs also allege they never received account statements, the name of the bank, or the number of account, as required by the January 23, 1985 stipulation.
 
 
 107
 It is important to note what is not in dispute here: under the district court's 1998 order, every plaintiff should ultimately receive refunds equal to the total amounts originally deposited in escrow (with interest on any previously-unrefunded portion):
 
 
 108
 "[F]or the years in which plaintiffs and other lawyers, following the commencement of this action up to the promulgation of the rules referred to above, paid 50% or another portion of their annual compulsory dues into an escrow account and said amounts have not been refunded then the Colegio shall refund the unrefunded amounts together with interest on those amounts from the end of the membership year for which they were deposited.
 
 
 109
 Schneider XI at 1-2. The Colegio must refund any amounts that were "paid" but "unrefunded," regardless of how much actually remains in the escrow account. At issue, then, is only the question of sanctions. I find no abuse of discretion in the district court's Conclusion that "the fairest way to resolve" the refund dispute, Schneider IX, 947 F. Supp. at 42, was its refund order, without the imposition of any sanction.
 
 E. Hector L. Marquez's hours
 
 110
 Schneider purports to argue on behalf of Hector L. Marquez-Figueroa, another attorney who represented Dissenting attorneys in this litigation, that the court erred in not granting an award of attorney's fees for hours expended by Marquez on behalf of plaintiffs Jorge F. Romany, Jorge Souss-Shidrewa, and Oreste V. Ramos-Diaz (the "consolidated plaintiffs") over the course of this litigation. The Colegio argues that this part of the appeal was not properly noticed, as the consolidated plaintiffs were not listed in the caption of the notice of appeal filed by Schneider. That notice is captioned "Robert E. Schneider, Jr., et als., plaintiffs." Federal Rule of Appellate Procedure 3(c)(1)(A) states that the notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X'." (Emphasis added.) Schneider, however, was not representing Marquez's "consolidated plaintiffs," and thus was not entitled to designate those plaintiffs as appellants informally through the use of "et al." in his notice of appeal.[48] Although Federal Rule of Appellate Procedure 3(c)(4) states that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice," this rule does not save the deficiency in the notice of appeal: "The failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." Torres v. Oakland Scavenger Co., 487 U.S. 312, 314 (1988). The consolidated plaintiffs failed to appeal the court's award of attorney's fees, and we therefore lack jurisdiction to consider the issue of Marquez's fees for representing them. See id. at 317.
 
 
 111
 F. The liability of the Justices of the Supreme Court of Puerto Rico for an award of attorney's fees
 
 
 112
 Schneider and Ramos insist the court erred in holding that the Justices of the Supreme Court of Puerto Rico were not liable for any part of the attorney's fees award. The district court ruled that the Justices would not be liable for attorney's fees because they had been reduced to nominal parties early in the case. See Schneider IX, 947 F. Supp. at 43 (fees ruling); Schneider II, 695 F.2d at 27 (Justices remain in case as nominal parties, but only as to their "administrative responsibilities in respect to the stamp statutes"). Schneider and Ramos focus entirely (and unpersuasively) on the Justices' potential fees liability for their "non-adjudicative enforcement" and remedy-drafting actions, responsibilities for which the Justices were not parties in this case.[49] The court's ruling was not an abuse of discretion.
 
 
 113
 For all of the reasons stated above, I concur with the judgment of the court.
 
 
 
 Notes:
 
 
 [1]
 Although Schneider and Ramos are both attorneys by profession, only Schneider served as an attorney for the two of them throughout this litigation, in both the federal and Commonwealth courts. Ramos never made an appearance as an attorney or sought attorney's fees for the hours he spent on the litigation.
 
 
 [2]
 Schneider's and Ramos' defense to the disciplinary proceeding originally challenged the mandatory membership and dues provisions as unconstitutional under both the Commonwealth and federal constitutions, but they subsequently withdrew their federal constitutional challenge. See In re The Justices of Supreme Court of Puerto Rico, 695 F.2d 17, 19 (1st Cir. 1982); Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d 32, 35 (1st Cir. 1984) (plaintiffs "attempted to withhold and reserve their federal claims under purported analogy with England v. Louisiana Medical Examiners, 375 U.S. 411 . . . (1964).").
 
 
 [3]
 Schneider and Ramos had not at this point challenged the Colegio's use of revenues from the sale of notarial and bar stamps. See In re The Justices of Supreme Court of Puerto Rico, 695 F.2d at 19 (plaintiffs had "no occasion at the time to challenge the stamp provisions"). The parties have in the past disputed whether the Supreme Court of Puerto Rico actually addressed the stamp issue in its 1982 ruling. We have consistently determined that it did not. See Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d at 36 n.5.
 
 
 [4]
 Three additional plaintiffs filed similar complaints in the district court within two weeks. See In re The Justices of the Supreme Court of Puerto Rico, 695 F.2d at 19. These plaintiffs, Jorge F. Romany, Jorge Souss-Shidrewa, and Oreste V. Ramos-Diaz, were at various stages of this litigation either pro se or represented by Hector L. Marquez-Figueroa.
 
 
 [5]
 This claim regarding stamp revenues was not addressed in the Commonwealth Court proceeding but was raised in the federal litigation. See In re The Justices of the Supreme Court of Puerto Rico, 695 F.2d at 19, 26; Schneider v. Colegio de Abogados de Puerto Rico, 742 F.2d at 36 n.5; compare Colegio I, 112 T.P.R. at 680, and see note 3, supra.
 
 
 [6]
 Judge Torruella continued to preside over all district court proceedings until April 13, 1995, sitting by designation after he joined this court in October, 1984.
 
 
 [7]
 See Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d at 37-38, for a description of the chronology of the Supreme Court of Puerto Rico's actions throughout the pendency of the 1982-83 federal proceedings.
 
 
 [8]
 "The escrow agreement should provide that these sums and the accumulated interest will eventually go to the Colegio and plaintiffs, in such amounts and proportions as the court directs pursuant to a final resolution of this litigation (meaning resolution at both the Commonwealth and federal levels)." 742 F.2d at 44-45.
 
 
 [9]
 We upheld this ruling regarding the law of the case. See Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620, 629 (1st Cir. 1990).
 
 
 [10]
 Earlier, the court had also stated that "decisions of the Puerto Rico [Supreme] Court have refused to apply res judicata when it would tend to defeat the ends of Justice," and that barring the federal action (at least as of 1982) would be a "gross miscarriage of Justice." Schneider I, 546 F. Supp. at 1270; see also Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d at 629.
 
 
 [11]
 Given that it had ordered an end to mandatory membership, the court also ordered an end to mandatory stamp use. Id. at 690.
 
 
 [12]
 The Colegio and Secretaries had prematurely submitted notices of appeal from the court's opinion, Schneider X, instead of waiting for the court's final judgment, Schneider XI.
 
 
 [13]
 Schneider's and Ramos' cross-appeal, No. 98-1619, was consolidated with the appeals in this case, Nos. 98-1071 and 98-1073. However, briefing of the cross-appeal was delayed until well after oral argument in the appeal, first owing to confusion over the briefing schedule, and then due to the initial submission of an appellant's brief that did not comply with the rules of this court and was returned. The cross-appeal was therefore resolved by this panel without oral argument.
 
 
 [14]
 In "contested litigation," pro se attorneys are "deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." Kay, 499 U.S. at 437.
 
 
 [15]
 I note that it makes no difference to the outcome here that Schneider also represented himself, in addition to his client Ramos; essentially every hour of attorney work done throughout this litigation would have been necessary to Ramos' case standing alone. I have therefore framed my Discussion of the Kay issue as if the award of fees in this case was made to Ramos alone (rather than to "plaintiffs," i.e. Schneider and Ramos, see Schneider XI, slip op. at 7).
 
 
 [16]
 Two sets of ethical rules were applicable to Schneider during the stages of this litigation. The Supreme Court of Puerto Rico has promulgated, as part of its Rules of Court, Canons of Professional Ethics governing the conduct of the legal profession in Puerto Rico, see 4 L.P.R.A. App. IX (1994), derived from the ABA's 1908 1908 Canons of Ethics, see Frank O. Bowman III, A Bludgeon by Any Other Name, 9 Geo. J. Legal Ethics 665, 763 n.502 (1996). Proceedings in the United States District Court for the District of Puerto Rico are currently governed by P.R. U.S. Dist. L.R. 211(4)(b), expressly adopting the ABA Model Rules of Professional Conduct.
 There are no specific provisions in these two sets of rules prohibiting an attorney from representing a client when that attorney is also representing himself, an omission that belies any notion of an inescapable conflict between the roles of attorney and party. Instead, the rules sensibly rely on general provisions requiring complete loyalty of the attorney to the client and the avoidance of employment when professional judgment might be affected by personal interests. See 4 L.P.R.A. App. IX, Canon 21 (requiring "complete loyalty," disclosure of conflict, and refusal of representation where lawyer's judgment might be compromised); Rules of Professional Conduct, Rule 1.7(b) (requiring reasonable belief that representation will not be affected, and client consent after consultation). At all times Schneider would continue to owe Ramos the duty "to defend the interests of his client diligently," exercising "the full discharge of his duty [without] fear of judicial disfavor or public unpopularity" under the Puerto Rico Canons. 4 L.P.R.A. App. IX, Canon 18. Under the Model Rules, Schneider would at all times be subject to the general duty to "zealously assert[] the client's position." Preamble, Rules of Professional Conduct.
 
 
 [17]
 Schneider and Ramos "admittedly did not" make any attempt to retain non-party counsel, from within the jurisdiction or without. See Appellees' Br. at 5. However, I note the 1997 Conclusion of the district court that it would be nearly impossible to find a Colegio member with true factual disinterestedness in this matter:
 [I]t is difficult to conceive how any lawyer with such an important professional association could achieve the complete independence and objectivity the Supreme Court felt should be encouraged by these fee awards. In these circumstances, it would be inevitable that the lawyer taking the case would lack complete detachment from the issues. So, in the end, finding representation might end up as choosing between the "fool" who represents himself and the "fool" who antagonizes the bar association and the legal establishment of the jurisdiction in which he or she works. It seems reasonable to speculate that finding a lawyer willing to challenge an organization of lawyers possessed of such a formidable degree of power, sophistication, and experience would be extremely unlikely, and not made more likely by the prospect of attorneys fees.
 Schneider X, slip op. at 2-3.
 
 
 [18]
 "After the first general convention of the Bar Association [Colegio], no person who is not a member thereof shall practice law in this Commonwealth." 4 L.P.R.A. § 774 (1994). However, there are provisions for courtesy admissions in the Supreme Court of Puerto Rico's Rules of Court:
 (d) Admission by courtesy
 Any person admitted to the bar in a state or territory of the United States or in the District of Columbia may be authorized by this Court, as a matter of courtesy, to practice law in Puerto Rico in special cases.
 4 L.P.R.A. App. I-A, Rule 11 (1994); see also 4 L.P.R.A. § 723 (1994) (explicitly allowing courtesy admission exception to other parts of statute) (originally added 1939).
 
 
 [19]
 After his 1982 Commonwealth suspension, Schneider remained admitted to the district court bar, allowing him to argue his own case in district court. See Motion Submitting Application for Attorney's Fees, Dkt. 257, at 5; S.R.A. at 131, 135.
 
 
 [20]
 The local district court rules changed July 1, 1989, by amendment adding the provisions for admission of members of other state bars in the current version, P.R. U.S. Dist. L.R. 201 (1994): "An attorney is qualified for admission to the Bar of this Court if he or she is currently in good standing as an attorney admitted to practice before the courts of the Commonwealth of Puerto Rico, the highest court of any State of the Union or the District of Columbia, and [has passed a District Examination Committee-approved exam on various federal subjects, or has held certain positions with the district or Commonwealth courts.]"
 
 
 [21]
 See also Hanrahan v. Hampton, 446 U.S. 754, 757 (1980) (plaintiff is a prevailing party for purposes of interlocutory fee award where he succeeds on "an important matter in the course of litigation, even when he ultimately does not prevail on all issues" (quoting S.Rep. No. 94-1011 (1976))).
 
 
 [22]
 Although the district court did not initially make an award of nominal damages to Schneider and Ramos in 1983, it did do so in 1988, and this award was confirmed by the final judgment in 1998. Compare Schneider III, 565 F. Supp. at 980 (ordering nominal damages award to only plaintiffs Oreste Ramos, Jorge Romany and Jorge Souss), vacated by Schneider V, with the later Schneider VII, 682 F. Supp. at 692 (awarding nominal damages to Schneider, Heector Ramos, Oreste Ramos, Romany and Souss), and Schneider XI at 2 ("each plaintiff shall be awarded One Dollar ($1.00) in nominal damages, with interest from June 16, 1983.").
 
 
 [23]
 See supra note 20.
 
 
 [24]
 The Colegio only protests the district court's failure to discount the fees award due to plaintiffs' limited degree of success on the ultimate merits on the grounds indicated above. See Appellants' Br. at 17-19, 39-41. They do not, for example, contest the district court's failure to discount the award for any time which the plaintiffs might have spent pursuing other failed claims, such as the conspiracy claims dismissed by the district court in Schneider I, 546 F. Supp. at 1262-63, and I therefore deem any such claims waived. In any event, it does not appear from the record before us that Schneider and Ramos spent much more effort in the pursuit of these conspiracy claims than was required to draft the paragraphs of their complaint describing the alleged conspiracy.
 
 
 [25]
 Under Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941), where resolution of an unclear question of state law might avoid the need to decide a federal constitutional question, federal courts may decline to exercise jurisdiction pending resolution of the state law issues in state court.
 
 
 [26]
 For example, where a form of relief was required by federal law to be exhausted before the filing of, e.g., a federal Title VII action, the proceeding in which such relief was sought would be such a legally necessary precursor to the federal Title VII claim. See infra note 27.
 
 
 [27]
 See Patsy v. Florida Board of Regents, 457 U.S. 496 (1982).
 
 
 [28]
 In contrast, under Title VII, an aggrieved plaintiff must first pursue administrative relief. Thus the attorney's fees provisions of Title VII have been held to compensate work done in successful state administrative and judicial proceedings to which a plaintiff's EEOC complaint had been referred (as required under Title VII). Where a plaintiff won relief in state proceedings, the EEOC subsequently issued a right-to-sue letter, and plaintiff moved for an award of attorney's fees for hours expended on the state proceedings, the Supreme Court has held such an award justified. See New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980).
 
 
 [29]
 Other federal courts have applied the majority opinion in Webb, as interpreted by Justice Brennan's concurrence, to allow for partial fee awards for work done in proceedings ancillary to a § 1983 action. See Perkins v. Cross, 728 F.2d 1099, 1100 (8th Cir. 1984) (remanded for findings regarding "extent, if any, that research or investigation done in connection with" prior municipal court criminal defense proved directly relevant to subsequent § 1983 action); McDonald v. Armontrout, 860 F.2d 1456, 1462 (8th Cir. 1988) ("research and investigation" done for one plaintiff's habeas petition prior to instant § 1983 action protesting prison conditions "'obviated the need for comparable work' in this proceeding"); Keenan v. City of Philadelphia, 983 F.2d 459, 474 (3d Cir. 1992) (hours expended on optional labor arbitration proceeding compensable where issues were the same as in later § 1983 action, and products of discovery in administrative proceeding were used in § 1983 trial); Fletcher v. O'Donnell, 729 F. Supp. 422, 429 (E.D. Pa. 1990) (hours spent defending arrestee in criminal case related to later "excessive force" § 1983 action held compensable where counsel gained needed familiarity with criminal case transcript); Stacy v. Stroud, 845 F. Supp. 1135, 1143 (S.D.W.V. 1993) (hours expended in DMV hearing compensable where claim for hours was selective, and where discovery for DMV hearing was relevant to §1983 action).
 
 
 [30]
 I do not suggest that Webb was determined entirely on the basis of Webb's all-or-nothing approach to the fees in question. Justice Stevens' opinion for the court indicated that even if Webb had made a partial claim, much of the work done in the administrative proceedings was in no way equivalent to any corresponding work needed for the § 1983 action, and that the fact that 11 months transpired between the administrative proceeding's resolution and the filing of the § 1983 claim further allowed the two bodies of attorney work (§ 1983-related and administrative) to be separated. See Webb, 471 U.S. at 243 nn.18, 19; see also Leroy v. City of Houston, 831 F.2d 576, 582 (5th Cir. 1987) (to be compensable, administrative activities must be close in time to later suit and also qualitatively similar).
 
 
 [31]
 The parties dispute the amount of money ultimately at issue. Plaintiffs' Motion Submitting Application for Attorney's Fees, Dkt. 257, (Sept. 22, 1988), at 7, indicates that there were 198.4 contested hours spent in the disciplinary proceedings, with a corresponding fee of $22,931.50. However, plaintiffs' Motion in Compliance with October 30, 1996 Order, Dkt. 382 (Feb. 7, 1997) indicates a total of 151.2 hours were dedicated to Commonwealth Court proceedings prior to June 3, 1982, with some hours billed at rates reduced from those in the 1988 motion, for a total fees claim of $13,827.20. The district court used the consistently lower fees claim figures in the Feb. 7, 1997 Motion in arriving at its total fee award, and we have therefore used the same statistics in determining the amount to be deducted from that award.
 
 
 [32]
 The district court's opinion does not indicate precisely what costs were awarded by the district court to plaintiffs Schneider and Ramos, the opinion making reference only to "the amounts detailed in the bills of costs hitherto filed in this action." See Schneider X, at 7. The bills of costs included in the record before us on appeal are limited to costs incurred in connection with federal court proceedings. See S.R.A. 408-413. Of course, any costs incurred in the Commonwealth Court proceedings prior to and unrelated to the federal action would not properly be compensable.
 
 
 [33]
 Reductions in the fee award were in fact made for certain clerical tasks for which attorney time was charged. See Schneider X, slip op. at 6.
 
 
 [34]
 The Colegio and Secretaries also seek a reduction in the fees award for the 18.8 hours (see S.R.A. 592) Schneider spent pursuing a cross-petition for certiorari in April 1991 (apparently 59 U.S.L.W. 3754 (U.S. Apr. 26, 1991) (No. 90-1651)). Because they did not proffer, here or below, see Dkt. 384, any evidence relating to whether this cross-petition merely responded to their own prior-filed petitions for certiorari, see Cabrales, 935 F.2d at 1053 (fees allowable for opposing petitions for certiorari), or whether the cross-petition raised new claims "seeking a greater victory" (Ustak, 851 F.2d at 990) that were unrelated to successful claims (see the Discussion of "relatedness" in Part C.1, above), I cannot say on the facts before us that the district court abused its discretion in including those hours in its fees award. (The cross-petition itself is not included in the record on appeal.)
 
 
 [35]
 The accounting by KPMG Peat Marwick apparently determined that the amount of dues attributable to ideological activities was as follows: 1989, $7.84 per member; 1990, $12.73; 1991, $4.83; 1992, $3.86. See Review Board Order, Dkt. 355.
 
 
 [36]
 In his first ruling in this case (preceding his formal designation to sit in the District of Puerto Rico), Judge Watson indicated that at the next hearing "[p]arties will be expected to address the question of the Amendment to Rule 6(c) [sic] and the issue of attorney's fees" and that "all other issues are outside the scope of this litigation." Minute entry, Dkt. 356. However, this ruling did not preclude Judge Watson from later changing his mind and addressing the issue of the dues refund. Moreover, the Colegio has failed to mention this minute entry on appeal.
 
 
 [37]
 Ironically, almost this exact language was offered by the Colegio in its proposed final judgment of Dec. 5, 1997, Dkt. 389 (proposed final judgments), Exh. B (Colegio proposal), at 2. However, because I find that the court's language did not constitute its ultimate order on the issue, I do not reach any issue of waiver.
 
 
 [38]
 A judgment is "effective only when set forth on a separate document" (such as the Schneider XI "Judgment"), as mandated by Fed. R. Civ. P. 58; see United States v. Indrelunas, 411 U.S. 216, 220 (1973). "It no longer is possible [following the 1963 amendments to Rule 58] for an opinion to have the effect of a judgment." 11 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2785. Proper judgments under Rule 58 omit "reasons and legal Conclusions," and "[t]he meaning of a judgment depends on what it says rather than on what is in the complaint or what the parties (or Judge) intended." Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co., 68 F.3d 1016, 1021 (7th Cir. 1995).
 
 
 [39]
 Schneider and Ramos had previously presented to the district court refund requests which might on their face appear broader than their proposed order in 1997 (quoted above). In 1994, they requested refunds for dues deposited in the escrow account "corresponding to the years 1978 to and including 1988" and "amounts to be refunded . . . for the years 1978 to 1994, inclusive". See Dkt. 379, Motion of Dec. 9, 1996, at 9, 11 (describing plaintiff's motion for entry of judgment of Oct. 27, 1994, Dkt. 328). However, these amounts were literally covered by plaintiffs' proposed order: on January 31, 1985, Schneider and Ramos paid 50% of their dues corresponding to years 1978 to 1985 into the escrow account (with an equal amount paid directly to the Colegio). Plaintiffs' proposed order specified that dues deposited in escrow "during the period from June 9, 1982 up to February 23, 1993" would be refunded. Since Schneider's and Ramos' dues payments for years 1978-1982 were actually deposited in escrow on January 31, 1985, i.e. during the period "from June 9, 1982 up to February 23, 1993," their payments for years 1978-1982 are literally covered by the proposed order.
 The court's actual refund order states that it applies to dues paid "for the years . . . following the commencement of this action up to the promulgation of the [new] rules," Schneider XI, at 1, which means only dues corresponding to years after the filing of the federal complaint in 1982, despite the fact that some dues for earlier years (dues years 1978 to 1982) were paid during "the years following the commencement of this [federal] action." The decision to limit the federal refund order to those deposits corresponding to dues years after the filing of the federal complaint was well within the discretion of the district court.
 
 
 [40]
 According to the record, Schneider is correct as to his main contention: in its Spanish-language submission to the Supreme Court of Puerto Rico summarizing the district court's November 18, 1992 order, the Colegio did not mention the district court's recommended change to Rule 6(A). See Dkt. 318, Exhibit, Motion Requesting Order (filed in the Supreme Court of Puerto Rico, Jan. 13, 1993), at ¶¶5. However, the Colegio did submit a complete copy of the Nov. 18, 1992 district court order (in the original English) to the Supreme Court of Puerto Rico along with its Spanish-language submission of January 13, 1993, and did accurately translate that Spanish-language submission back into English for the benefit of the district court when it informed that court of its compliance with the November 18, 1992 order. See Informative Motion, Dkt. 318 (filed in district court, Jan. 15, 1993).
 
 
 [41]
 I note that the Colegio's proposed reading is consistent with the 1986 Rule of the Supreme Court of Puerto Rico which allowed Dissenters to object at any time during the year. See Remedy Part C(1)(a), Colegio II, 17 T.P.R. at 633. That rule was, of course, superceded by the 1992 Rule.
 
 
 [42]
 See 59 U.S.L.W. 3674 (U.S. Mar. 20, 1991) (No. 90-1470); 59 U.S.L.W. 3687 (U.S. Apr. 1, 1991) (No. 90-1513) (sub nom. Culpeper v. Schneider); 59 U.S.L.W. 3754 (U.S. Apr. 26, 1991) (No. 90-1651).
 
 
 [43]
 Schneider asserts that this was the case; although there were no findings below on this matter, the Colegio does not deny its failure to give notice, describing the allegation as a "baseless, sordid accusation" but then stating in its defense only that the "district court . . . notified all the parties." Red Br. on Cross Appeal at 23, 24.
 
 
 [44]
 I have not considered whether plaintiffs' claims on cross-appeal for sanctions (for the failure to give notice, above, or for the withdrawal of funds from the escrow account, below) are timely, because the cross-appellees do not raise the issue, and because a finding of untimeliness would not affect the outcome in any event.
 
 
 [45]
 The stipulation allowed for a single escrow account, instead of the individual escrow accounts for each Dissenter which the Supreme Court of Puerto Rico's November 13, 1984 resolution had specified, but which apparently proved administratively cumbersome.
 
 
 [46]
 That portion of the escrow account corresponding to funding for ideological activities (as determined by the Review Board) would be refunded to the Dissenting members, and the balance remitted to the Colegio. Colegio II, 17 T.P.R. at 635-36.
 
 
 [47]
 By way of illustration, if annual dues were $100, Dissenters would have paid $50 to the Colegio and $50 into escrow. When the Colegio withdrew the interest and 70% of the escrowed $50, or $35 ($50 x 0.70 = $35), $15 would remain in escrow, or 15% of total dues ($15/$100 total dues x 100% = 15%).
 
 
 [48]
 The body of the notice states "the consolidated plaintiffs in cases 82-1513, 82-1514 and 83-1532 by their undersigned attorney" are giving notice, which implies that Schneider was now attorney of record for the consolidated plaintiffs on cross-appeal. Plaintiffs' Notice of Cross Appeal, Apr. 28, 1998, Dkt. 393. However, there is no appearance of counsel in the record adding Schneider to the existing roster of counsel for the consolidated plaintiffs.
 Schneider I lists Schneider as counsel for "plaintiffs", listing all plaintiffs and case numbers in its caption. But the opinion's text only discusses Schneider and Ramos. In captions of all later federal cases, Schneider is not explicitly listed as representing consolidated plaintiffs, and they are often listed separately with Marquez as counsel.
 Finally, the plaintiffs' September 28, 1988 "Motion Submitting Application for Attorney's Fees," Dkt. 257, clearly states that Schneider is the attorney for "plaintiffs," defining that term to mean himself and Heector Ramos, as distinct from the defined term "consolidated plaintiffs," defined as Oreste Ramos, Jorge Souss and Jorge Shidrewa, listed as represented by Marquez. Throughout this motion, the term "plaintiffs" is consistently distinguished from "consolidated plaintiffs."
 Marquez did represent Schneider at various stages of this litigation, but fees for Marquez's representation of Schneider are not at issue here. The appellant's brief on cross-appeal only contests Marquez's fees for representing the consolidated plaintiffs.
 
 
 [49]
 In Schneider VIII, 917 F.2d at 629 n.10, we stated that "the Justices are now appropriate parties in the dues claim because of their promulgation of the 1986 Rule." Assuming arguendo that the effect of this language was to transform the Justices from nominal parties to active parties, the Justices still would enjoy total immunity from liability for actions taken in their legislative capacity, as was established in Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 738-39 (1980) (Court immune from damages award for refusal to modify a bar rule against attorney advertising). "[A]lthough the Virginia Court and its chief Justice were subject to suit in their direct enforcement role, they were immune in their legislative roles." Id. at 738. Although Congress did intend to allow attorney's fees for successful prospective (e.g., injunctive) relief against parties otherwise immune from damages awards, the Court held that because the Virginia Court's legislative actions were immune even to prospective relief, they were necessarily immune to liability for attorney's fees under § 1988. Id. at 739.